No. 45,074

George L. Potter, *Appellant,* v. Northern Natural Gas
Company, a Corporation, *Appellee.*

(441 P. 2d 802)

Opinion filed June 8, 1968.

*A. M. Fleming,* of Garden City, argued the cause and *Lloyd H. Haag, Dale E. Saffels* and *Clifford R. Hope, Jr.,* all of Garden City, were with him on the brief for appellant.

*R. H. Calihan, Jr.,* of Garden City, argued the cause and *Ray H. Calihan, Logan N. Green* and *Daniel J. High,* all of Garden City, were with him on the brief for appellee.

The opinion of the court was delivered by

Fromme, J.: This appeal was taken from a summary judgment entered in favor of defendant on the pleadings. The action was filed by a landowner, George L. Potter, against a pipeline company operating a pipeline across plaintiff's property for the transmission of natural gas. The purpose of the action is to require the company to pay the expense of lowering 300 feet of pipeline and to recover

damages for failure to do so under the terms of the grant of easement.

The defendant, Northern Natural Gas Company, a corporation, will be referred to as the pipeline company.

From the allegations in the petition we learn the grant of easement was made in 1950 and the pipeline was installed at that time. The land previously had been and continued to be irrigated and farmed thereafter.

In 1965, fifteen years after installation of the pipeline, the land-owner entered upon a project to level and regrade the land in an effort to increase production but was prevented from completing the project because the pipeline company has refused to lower 300 feet of the pipeline at its expense.

The pipeline company stipulated during oral arguments before this court that they would lower the pipeline if the landowner would pay the expense thereof. The landowner contends the pipe-line company is obligated to pay this expense under the terms of the easement.

A copy of this easement, which is a part of the petition, omitting the heading and the acknowledgment, reads as follows:

*"Know All Men by These Presents:*

"That George L. Potter, a single man, 923 State St., Lafayette, Indiana, of the County of Tippecanoe and State of Indiana, for and in consideration of the sum of One Dollar ($1.00) per lineal rod, receipt of One Dollar ($1.00) of which consideration is hereby acknowledged and balance of which is to be paid when and as the location of a pipe line over and through the lands here-inafter described shall be established, surveyed and measured, and the further consideration of the performance of the covenants and agreements by the grantee, as hereinafter set out and expressed, does hereby GRANT, REMISE AND RELINQUISH UNTO NORTHERN NATURAL GAS COMPANY, a Delaware Corpora-tion, its successors or assigns the RIGHT, PRIVILEGE AND EASEMENT to construct, maintain and operate a pipe line, and appurtenances thereto, over and through the following described lands and appurtenances thereunto belonging, including, riparian rights, situated in the County of Finney and State of Kansas, to-wit:

"All that part of the East Half (E½) of Section Three (3), located NORTH of the Atchison Topeka & Santa Fe Co's. Right of Way; and SOUTH of the Farmers Ditch Co.'s Right of Way; in the East Half (E½) of Section Three (3), Township Twenty-Four (24)-S; Range Thirty-Four (34);

"To HAVE AND TO HOLD unto said NORTHERN NATURAL GAS COMPANY, its successors and assigns so long as such pipe line and appurtenances thereto, shall be maintained, together with the right of ingress to and egress from said premises, for the purpose of constructing, inspecting, repairing, maintaining and replacing the property of the grantee located thereon or the removal thereof, in whole or in part, at the will of the grantee; it being the intention of the parties hereto that grantor is hereby granting the uses herein specified without

divesting grantor of the right to use and enjoy said above described premises, subject only to the right of the grantee to use the same for the purposes herein expressed.

"As a further consideration for this grant, the grantee herein agrees as follows:

"(1) That it will bury all pipe laid upon said land to a sufficient depth so as not to interfere with the cultivation of the soil.

"(2) That it will pay to grantor any damages which may arise to growing crops, trees, shrubbery, fences or buildings from the construction, maintenance or operation of said pipe line.

"(3) That grantee will replace or rebuild to the satisfaction of grantor or of his representative, any and all damaged parts of all drainage systems, the damage to which shall be occasioned by the construction of said pipe line under and through the above described premises.

"This instrument, and the covenants and agreements herein contained, shall inure to the benefit of and be binding and obligatory upon the heirs, executors, administrators, successors and assigns of the respective parties.

"IN WITNESS WHEREOF, we have hereunto set our hands this 27th day of April, 1950.
Signed, Sealed and Delivered in the Presence of
J. B. Center
H. V. Arwin                                                    George L. Potter."

The trial court found no ambiguity in the instrument and determined as a matter of law from the entire instrument the pipeline company was not required to lower the pipeline at its expense under the facts set forth in the petition.

If the language of a grant of easement is clear and explicit extraneous circumstances may not be resorted to, nor parol evidence admitted, to vary the terms of the instrument. (25 Am. Jur. 2d, Easements and Licenses, § 23, p. 434; 28 C. J. S., Easements, § 26, p. 680.)

Therefore, it would appear if the language of the grant is clear and explicit the construction to be given the instrument was a question which could properly be determined on motion for summary judgment under the rules set forth in *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964, and *Jarnagin v. Ditus*, 198 Kan. 413, 424 P. 2d 265.

Before examining the express terms of the present easement it may be helpful to review some of the basic rules of law which concern the nature and characteristics of an easement.

An easement is an interest which one person has in the land of another. A primary characteristic of an easement is that its burdens fall upon the possessor of the land from which it issued. This characteristic is expressed in the statement that the land constitutes

a servient tenement and the easement a dominant tenement. (Restatement of Law, Property, Vol. V, Servitudes, § 450, p. 2901.)

The owner of the servient tenement may make any use thereof which is consistent with or not calculated to interfere with the exercise of the easement granted. (Tiffany, Law of Real Property, 3d Ed., Vol. 3, § 811; 28 C. J. S., Easements, § 91, p. 770.) The character and extent of the rights created by a grant of easement is determined by construction of the language of the grant and by the extent of the use made of the dominant tenement at the time of the grant. (Tiffany, Law of Real Property, 3d Ed., Vol. 3, § 802; 28 C. J. S., Easements, § 26, p. 680.)

The landowner places special emphasis on the following statement appearing in the habendum clause of the grant:

". . . it being the intention of the parties hereto that grantor is hereby granting the uses herein specified without divesting grantor of the right to use and enjoy said above described premises, subject only to the right of the grantee to use the same for the purposes herein expressed."

He argues if the grantee is not required to lower the pipeline and pay this expense the grantor has been divested of the right to use and enjoy the premises in violation of the grant.

This provision authorizes the landowner to use and enjoy the land *subject only to the right of the grantee to use the same for the purposes therein expressed* (operation of pipeline across the land). It is clear the landowner has the right under the provision to irrigate and farm the land as he did from 1950 to 1965. However, the rights granted and received are to be determined under the grant as originally intended and when the pipeline is in place and the considerations for the easement have been paid and complied with the extent of grantee's interest is fixed and his future liabilities are then limited to the terms of the grant. The easement being the dominant tenement is not subject to the will of the possessor of the land. (*Smith v. Harris*, 181 Kan. 237, 247, 311 P. 2d 325.)

Under the allegations of the petition it must be conceded the pipeline company paid cash consideration of one dollar per lineal rod. This cash consideration was small but it was the amount agreed upon by the parties. The pipeline company buried all pipe laid to a sufficient depth so that it did not interfere with the irrigation or cultivation of the soil from 1950 to 1965. No claim is made that it failed to pay damages arising from the construction, maintenance or operation of the line. It is not alleged that it failed to

replace and rebuild the damaged parts of the drainage systems occasioned by the original construction of the pipeline.

The cost of lowering 300 feet of pipeline was occasioned by the project of the landowner undertaken for his own benefit. The necessity did not arise by reason of an act of God or natural erosion of the surface of the land. To require the pipeline company to pay this expense would have the effect of inserting an additional provision in the original grant requiring the grantee to furnish additional consideration for the rights granted and received by it in 1950. A court may not make an agreement for the parties which they did not make themselves. In *Williams v. Safeway Stores, Inc.*, 198 Kan. 331, 424 P. 2d 541, it was said:

"The intention of the parties and the meaning of a contract are to be deduced from the instrument when its terms are plain and unambiguous; when the language is clear and unequivocal the meaning must be determined by its contents alone. Words cannot be read into a contract which import an intent wholly unexpressed when it was drawn and executed. The court may not make an agreement for the parties which they did not make themselves. (Omitting citations.) (p. 344.)"

Although the precise question has not been decided previously in Kansas there is respectable authority from other states to support our conclusion that the expense of lowering the pipeline should not be placed upon the pipeline company under the circumstances of this case.

In *Minard Run Oil Co. v. Pennzoil Co.*, 419 Pa. 334, 214 A. 2d 234 (1965), it was held that where the relocation of a pipeline was to benefit the servient tenement and permit construction of improved roadways the cost of relocation should be paid by the party for whose benefit the change was to be made.

In *Street v. Sinclair Pipeline Company*, Tex. Civ. App., 386 S. W. 2d 350 (1965), it was held the owner of the land had no right to require the pipeline company to relocate the pipeline or to pay damages for refusal to do so under the terms of the grant of easement which stated, ". . . Grantor shall have the right to fully use and enjoy said premises except as the same may be necessary for the purposes herein granted unto said Grantee. . . ."

In the present case the grant of easement is clear, explicit and unambiguous. The rights granted thereunder have been appropriated and enjoyed by the defendant for fifteen years without question. The character and extent of the rights created are determined by construction of the language of the grant and by the extent of

the use made of the dominant tenement since the time of the grant. Under the circumstances of this case the trial court properly determined as a matter of law the defendant pipeline company was not required to lower the pipeline at its own expense.

The judgment is affirmed.

SCHROEDER, J., dissenting: I cannot agree that the construction of the right-of-way agreement, attached as an exhibit to the petition herein, should be construed as the court has determined it.

The petition alleges the 140-acre tract in question was used as an irrigated farm at the time of the execution of the agreement granting a pipeline right-of-way across the farm. The agreement itself contains provisions clearly indicating that at the time the easement was granted the farm was being used as an irrigated farm. It recites:

"That grantee will replace or rebuild to the satisfaction of grantor or of his representative, any and all damaged parts of all drainage systems, the damage to which shall be occasioned by the construction of said pipe line under and through the above described premises."

Contrary to the easements involved in some of the cases cited by the court, the agreement herein specifically undertakes to declare the intention of the parties. It recites:

". . . it being the intention of the parties hereto that grantor is hereby granting the uses herein specified *without divesting grantor of the right to use and enjoy said above described premises,* subject only to the right of the grantee to use the same for the purposes herein expressed." (Emphasis added.)

The instrument also makes a further recital as to the consideration for the grant, in addition to the nominal consideration of $1.00 per rod. It recites:

"As a *further consideration* for this grant, the grantee herein agrees as follows:

"(1) *That it will bury all pipe laid upon said land to a sufficient depth so as not to interfere with the cultivation of the soil.*

"(2) That it will pay to grantor any damages which may arise to growing crops, trees, shrubbery, fences or buildings from the construction, maintenance or operation of said pipe line." (Emphasis added.)

It therefore appears to me that the clear intention expressed by the parties in the instrument granting the easement is that the grantor gave to the pipeline company a right-of-way for a pipeline, *without divesting his right to use and enjoy the farming of said land as an irrigated farm, and the pipeline company specifically*

*agreed to bury all pipe on the land to a sufficient depth so as not to interfere with the cultivation of the soil as an irrigated farm.*

Now, when the landowner began leveling his farm to further improve it for irrigation purposes, he encountered 300 feet of the pipeline which had been installed too close to the surface.

The petition alleged there was another pipeline across the land which was buried to a sufficient depth and most of the line in question, except for 300 feet, was also buried to a sufficient depth.

The court holds as a matter of law that under the easement granted the landowner in this case must stand the expense of lowering the pipeline so that he may continue to enjoy the use of his land as an irrigated farm. With this construction of the easement I cannot agree.

There are two reasons why the landowner in the instant case is entitled to a liberal construction of the easement. First, the trial court, in ruling on a motion for a summary judgment which is based on the pleadings herein, is required to construe the pleadings liberally in favor of the party against whom the motion is directed. Second, the grantor is entitled to the inference that the easement in the instant case was prepared by the grantee, just as insurance policies are prepared by the insurance company, and the language contained therein must be construed liberally in favor of the grantor.

It must be conceded that the grant in the instant case speaks as of the date of its execution, but it is reasonable to say under the specific provisions of the grant herein that the parties at the time they entered into the agreement contemplated reasonable improvements to the land for the uses to which it was put at that time; that is, an irrigated farm. For an irrigated farm, in my opinion, this would include leveling of the land, construction of new ditches and/or the change of ditches existing at the time the easement was granted. Note the grantee specifically agreed to bury the pipe to a sufficient depth so as not to interfere with the cultivation of the soil, and further to replace or rebuild to the satisfaction of the grantor any damaged parts of the drainage systems on the land at the time the easement was constructed. The appellant herein is entitled to an inference that the pipeline company did bury the pipeline to a sufficient depth so as not to interfere with irrigation ditches existing on the land at the time of installation. In fact, in argument counsel for the landowner said the pipe was buried under

a deep irrigation ditch near the point in question and then "goose-necked" up to the surface for about 300 feet.

In my opinion, the easement in question is not ambiguous in that a recital reserving to the grantor the right to use and enjoy the premises for agricultural purposes, as here, contemplates the right of the grantor to improve the land for such purposes without interference from the uses granted for the pipeline. For an irrigated farm this would include, among other things, the leveling of the soil, or on a farm that is not irrigated the construction of terraces to conserve the soil. This is all in keeping with the concept of our society that the soil which is one of our great natural resources is to be conserved and improved by those who presently use it for the benefit of posterity.

If, on the other hand, it cannot be said the construction of the easement in question is clear on the theory just advanced, then, to say the least, it is ambiguous with respect to the contemplation of the parties regarding improvement of the land in question, bearing in mind the instrument in question specifically undertakes to declare the intention of the parties. Under these circumstances, the trial court would be required to hear evidence to determine the intention of the parties on the point in question as of the date the easement was granted.

In either event, it is respectfully submitted the judgment of the trial court should be reversed.

FATZER, J., joins in the foregoing dissent.