**SUN PIPE LINE COMPANY, Appellant,**

v.

**Robert ALTES, d/b/a A & A Materials and Landfill Company, Appellee.**

No. 74–1450.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1975.

Decided Feb. 19, 1975.

J. H. Evans, Fort Smith, Ark., for appellant.

Josef V. Hobson, Fort Smith, Ark., for appellee.

Before GIBSON, Chief Judge, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Sun Pipe Line Company (Sun), a Pennsylvania corporation with its principal place of business in Oklahoma, brought this diversity action against

Robert Altes, a resident of Arkansas, seeking to recover in excess of $35,000 for damages incurred when one of Altes' employees, while operating an earth moving machine, punctured a pipeline owned by Sun. After a trial in the district court the jury returned a verdict for defendant Altes, and judgment was entered accordingly. Sun appeals, alleging that the court erred in four respects: (1) in refusing to instruct the jury that Sun had the right to bring this action; (2) in instructing the jury that Sun had the duty to bury its pipeline at a depth sufficient to avoid interference with lawful activities of the owner of the land; (3) in giving instructions regarding contributory negligence; and (4) in refusing to direct a verdict for Sun. Because we agree with the first two assignments of error, we reverse and remand for a new trial.

At the time of the incident which resulted in this litigation Altes owned a parcel of land in LeFlore County, Oklahoma, on which he operated a rock quarrying and landfill business. This consisted of removing rock from below the surface, crushing it, selling it and then filling in the excavation with trash and covering it with soil. At the time he purchased the land in early 1972 Altes had noticed that there was an easement for a pipeline across it and that such a pipeline did, in fact, exist.

This right-of-way for the pipeline was acquired in 1953 by Oklahoma Mississippi River Products Line, Inc., from the Markells, who owned the property at that time. In the easement the Markells granted to the firm, "its successors and assigns," the right "to lay, maintain, operate, inspect and remove a pipe line" on the land in question. This written agreement, which was binding on the "heirs, devisees, administrators, executors, successors, or assigns" of the parties to it, further provided:

It is agreed that the pipe line to be laid under this grant shall be constructed and maintained below cultivation depth, so that Grantors may fully use and enjoy the premises, subject to

the rights of the Grantee to maintain and operate said line or lines.

Altes warned his workers not to conduct quarrying operations in the area where the pipeline was buried. Nonetheless, on March 16, 1972, one of his employees did operate a front end loader in the vicinity of the pipeline and, while digging into the soil, punctured it. A considerable amount of gasoline being pumped at high pressure escaped through the hole, and the pipeline had to be shut down for repairs. There was no question but that the employee had been negligent and that this negligence was attributable to Altes.

The principal conflict which developed during the trial testimony was whether Sun had been contributorily negligent in not marking the route of the pipeline properly and in not burying it deep enough. In this regard there was wide divergence in the testimony as to the depth at which the pipeline was buried at the point of the puncture. Likewise, there was considerable confusion as to whether the pipeline was adequately or accurately marked on the property itself or on a plat of the property.

Another issue which developed at trial was whether Sun had a right to prosecute the action. It was revealed that at the time of the break the pipeline was owned by OMR, Inc., a successor firm to Oklahoma Mississippi River Products, Inc., but that the litigation was initiated by Sun after its merger with OMR in August, 1972, in which Sun was the surviving corporation. Evidence was received on this issue, including the articles of merger.

*Refusal to instruct jury on Sun's right to bring action*

Since the issue of Sun's right to bring the action had been injected into the trial, Sun requested that the district judge instruct the jury that, in accordance with the merger agreement between Sun and OMR, Sun succeeded to all of OMR's rights and liabilities and was entitled to maintain an action for damages against

Altes. The court refused to give this instruction.

During his closing argument Altes' attorney argued to the effect that, since OMR owned the pipeline at the time of the accident, Sun had failed to prove that it had sustained any damages. When Sun objected to this line of argument on the ground that it had the right to bring suit for damages to OMR as a matter of law, the trial judge merely told the jury that it is "for you to determine the effect of the merger." Altes' counsel continued to argue that Sun had sustained no damages.

The instruction requested by Sun was not given and neither was the jury informed as to the law of merger. On the other hand, the jury was told that, before it could award damages to Sun, it must find that Sun had sustained damages. Thus, the jury was left in the position of determining whether Sun could recover for damages to OMR. This was error.

■ Fed.R.Civ.P. 17(b) states that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Sun is a Pennsylvania corporation, so the law of that state determines whether it can sue to recover premerger damages to OMR.

■ Pa.Stat.Ann. tit. 15, § 1907 (1974 Supp.) deals with the effect of a merger or consolidation of corporations and provides:

> All the property, real, personal, and mixed and franchises of each of the corporations parties to the plan of merger or consolidation, *and all debts due on whatever account to any of them, including subscriptions to shares and other choses in action belonging to any of them*, shall be taken and deemed to be transferred to and vested in the surviving or new corporation, as the case may be, without further act or deed. (Emphasis supplied.)

This statute makes it explicitly clear that Sun, the surviving corporation, was vested with OMR's chose in action against Altes and could bring this lawsuit to recover for OMR's damages. *See*

In re Penn Central Securities Litigation, 335 F.Supp. 1026, 1034 (E.D.Pa.1971). In addition, we note that the merger agreement itself conformed to the Pennsylvania statute by providing that Sun would be vested with "all property, real, personal and mixed, and all debts due to each" of the corporations.

■ Finally, this Court has stated that statutes, such as Pennsylvania's, which provide that a successor corporation inherits a chose in action from a merging corporation as a matter of law merely serve to codify the common law rule "which recognizes that a chose in action to enforce a property right upon merger vests in the successor corporation and no right of action remains in the merging corporation." Western Auto Supply Co. v. Gamble-Skogmo, Inc., 348 F.2d 736, 741 (8th Cir. 1965), cert. denied, 382 U.S. 987, 86 S.Ct. 556, 15 L.Ed.2d 475 (1966).

In light of this well settled statutory and common law rule, the trial court should have given Sun's requested instruction. The effect of the court's instructions combined with the argument of Altes' attorney was to leave this question of law to the unfettered and unguided discretion of the jury, and this constituted prejudicial error.

*Instruction on the duty to bury the pipeline.*

■ Over Sun's objection the trial court instructed the jury that Sun, as the operator of a pipeline transporting hazardous materials, had the following duties:

> To bury its pipeline at such adequate depth as to avoid interference with lawful activities which are known to the pipeline company to be conducted by the owner or user of the surface adjacent to the pipeline. To properly mark and identify the location of its pipeline.

Sun argues, and we agree, that in the context of this case that part of this instruction dealing with the depth of burial was prejudicially erroneous.

■ The easement for the pipeline right-of-way had originally been created

by a conveyance, the written grant from the Markells. In such a situation the rights and liabilities of the parties are determined by the terms of the agreement. Potter v. Northern Natural Gas Co., 201 Kan. 528, 441 P.2d 802, 805 (1968); Minard Run Oil Co. v. Pennzoil Co., 419 Pa. 334, 214 A.2d 234, 235–236 (1965); Restatement of Property § 482 (1944).

The grant conveying this particular easement specifically stated that the pipeline would be "constructed and maintained below cultivation depth." Therefore, Sun had a duty to maintain the pipeline below cultivation depth. It did not have the duty stated in the instruction to bury the pipeline at such a depth as to avoid interference with all possible lawful activities on the land. Cf. Buckeye Pipe Line Co. v. Keating, 229 F.2d 795, 798 (7th Cir.), cert. denied, 352 U.S. 830, 77 S.Ct. 44, 1 L.Ed.2d 51 (1956); Potter v. Northern Natural Gas Co., supra, 441 P.2d at 806; Minard Run Oil Co. v. Pennzoil Co., supra, 214 A.2d at 235–236.

The prejudice to Sun created by this erroneous instruction is manifest. There was considerable evidence introduced at trial indicating that the pipeline company knew of the quarrying operations on Altes' land before the accident and that this quarrying was a lawful activity being carried on under applicable Oklahoma statutes and regulations. Under the erroneous instruction and the evidence the jury could have been misled into believing that Sun could not recover because it had violated a duty to bury the pipeline at a depth adequate to not interfere with Altes' lawful quarrying business—a duty it did not legally have.

*Instruction on contributory negligence and refusal to direct a verdict for Sun.*

We need not and do not reach these issues in order to dispose of this appeal. However, we do note that whether or not to instruct on contributory negligence or direct a verdict will depend upon the evidence adduced at the new

trial with regard to the depth of burial of the pipeline in relation to cultivation depth and the manner in which the pipeline right-of-way was posted.

If an instruction on contributory negligence is deemed necessary, it should conform to Oklahoma law [1] which, in turn, appears to be in line with the general rules regarding this defense. *See* Sinclair Prairie Oil Co. v. Thornley, 127 F.2d 128, 132 (10th Cir. 1942) (Oklahoma law); Bready v. Tipton, 407 P.2d 194, 200 (Okl. 1965).

*Conclusion.*

For the reasons discussed in this opinion the judgment of the district court is reversed and the cause is remanded for a new trial.

---

1. The parties do not dispute the application of Oklahoma law to this issue.