[Civ. No. 50776. Second Dist., Div. Five. Mar. 27, 1978.]

GERALD P. McCANN, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

**COUNSEL**

Burt Pines, City Attorney, Norman L. Roberts, Assistant City Attorney, Anthony P. Parrille, Deputy City Attorney, and Frank Manzano, City Attorney, for Defendants and Appellants.

Wadsworth, Fraser & Dahl and Robert H. Dahl for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—Defendants City of Los Angeles and City of Glendale appeal from a judgment based on breach of an easement agreement for damages in the amount of approximately $32,000.

Plaintiff purchased a piece of real property at 4570 Colorado Boulevard in the City of Los Angeles. He desired to construct a manufacturing facility, warehouse, and offices on it. The property was previously used only to stable horses and for pleasure horse riding.

When he purchased the property, plaintiff was aware that it was subject to a sewer easement purchased by the City of Glendale in 1925. A sewer running diagonally across the property was constructed in 1925 to 1927. It was a 42-inch unreinforced concrete semielliptical sewer buried 15 to 20 feet underground. It was a main trunk line of the sewer system, serving the communities of Glendale, Burbank, San Fernando, and Los Angeles. If this sewer were damaged and it failed, a significant health hazard would have resulted.

Without special designs to prevent the weight of plaintiff's building from bearing down on the sewer, construction of the building would have damaged the sewer. The City of Los Angeles operated and maintained the sewer pursuant to agreements with the City of Glendale. The property was located in the City of Los Angeles, and when plaintiff applied for a building permit, the permit was issued on the condition, among others, that the building span the sewer easement. Plaintiff's contractor designed a construction of "concrete caissons that are drilled on each side of the sewer, with beam constructed over the top in order to support the weight of the building structure without any of it being superimposed on the [sewer]. . . . [¶] [I]t is a bridge-type structure to straddle the sewer."

Plaintiff went ahead with construction, using the straddling design. This type of construction cost plaintiff $32,000 more than the building would have cost if no special design to protect the sewer had been necessary.

■ It is the theory of plaintiff's case, adopted by the trial court in a nonjury trial, that the 1925 agreement granting the sewer easement to the City of Glendale entitles plaintiff to reimbursement by the Cities of Glendale and Los Angeles[1] for the cost of straddling the sewer. We hold that this is an erroneous interpretation of the 1925 easement and therefore we reverse.[2]

## DISCUSSION

The 1925 agreement between the City of Glendale and plaintiff's predecessors in interest granted to the City of Glendale for $1 and other valuable consideration "a perpetual easement and right of way for the construction, reconstruction, inspection[,] maintenance, operation and repair of a sanitary sewer in, under and along" a described 15-foot line across the property, "[t]ogether with the right to enter upon and to pass and repass over and along said strip of land, and to deposit tools, implements and other material thereon . . . whenever and wherever necessary for the purpose of constructing, reconstructing, inspecting, maintaining, operating and repairing said sanitary sewer."

On its part, Glendale agreed "[t]hat said sanitary sewer shall be constructed in a first class workmanlike manner. That upon the completion of said sanitary sewer, as much as possible of the earth excavated from the trench therefor shall be thrown back into the trench, and the remainder shall be removed; and that all of said back-filling shall be thoroughly packed, so that the ground will not sink or cave in after said back-filling is completed, and the top foot of said back-fill shall be good, soft earth or soil; *That this easement shall in no manner interfere with the use of the surface of the ground by first parties or assigns for buildings or any purpose whatever, except during actual construction of said sewer; That the City of Glendale shall reimburse first parties or any of their tenants for actual damages to crops, trees, buildings or equipment, or loss of use thereof or of their land caused by its entry thereon;* That the parties of the first part reserve the right to dedicate any part of the herein described property for public streets or alleys; That as a further consideration, the City of Glendale does hereby agree that any storm

---

[1]It was stipulated that if Glendale is liable under the wording of the 1925 easement, Los Angeles, which maintained and operated the sewer pursuant to agreement with Glendale, is also liable.

[2]The interpretation of the 1925 easement is in this case a question of law which does not depend upon conflicting extrinsic evidence, and therefore the appellate court is not bound by the trial court's interpretation. (*Faus* v. *City of Los Angeles,* 67 Cal.2d 350, 360 [62 Cal.Rptr. 193, 431 P.2d 849].)

waters from the streets of Glendale shall be prevented from damaging the lands of the first parties, and that should any such damage occur it will reimburse first parties or successors in interest or any tenants for any such damage." (Italics added.)

The trial court found that to require plaintiff to pay the cost of straddling the sewer would be an interference with his use of the surface of the ground and would breach the 1925 agreement. Plaintiff relies particularly upon the language we have italicized above. This interpretation of the agreement is erroneous.

The easement granted to the City of Glendale in 1925 was a permanent interest in the land. The easement became the dominant tenement and the land became the servient tenement. (Civ. Code, § 803.) The owner of the servient tenement had the right to make any use of the land "that does not interfere unreasonably with the easement." (*Pasadena* v. *California-Michigan etc. Co.,* 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186].)

Plaintiff is not permitted to do to the surface of the land anything that unreasonably interferes with the sewer easement. Constructing on the surface a building which so weighs down on the sewer as to damage it unreasonably interferes with the easement. In *Bd. Dir. Turlock Irr. Dist.* v. *City of Ceres,* 116 Cal.App.2d 824 [254 P.2d 907], the irrigation district had constructed a pipeline under the ground. The city permitted subdivision and development of the surface with the result that streets and increased traffic passed over the pipeline, requiring reinforcing of the pipeline to bear the added strain. The court held that the city was liable to pay the easement holder, the irrigation district, for the cost of reinforcing the pipeline. (*Id.,* at p. 830.) To the same effect, see *Minard Run Oil Company* v. *Pennzoil Company,* 419 Pa. 334 [214 A.2d 234, 235-236] (private road constructed across pipeline; landowner must pay cost of sinking the pipeline); *Tenneco, Inc.* v. *May* (E.D.Ky. 1974) 377 F.Supp. 941, 943-944, affd. (6th Cir. 1975) 512 F.2d 1380, 1381 (same); *Phillips Pipe Line Company* v. *Razo* (Tex. 1967) 420 S.W.2d 691, 695 (landowner permitted unusually heavy construction vehicles to cross pipeline, damaging it; this use of the surface unreasonably interfered with the pipeline easement). See also Annotation (1953) 28 A.L.R.2d 626.

Plaintiff concedes the general rules to be correctly stated by such authorities, but contends that the particular language of the agreement in

this case is "unique" and entitles him to reimbursement. We disagree. (*Tide-Water Pipe Co.* v. *Blair Holding Co., Inc.,* 42 N.J. 591 [202 A.2d 405]; *Potter* v. *Northern Natural Gas Company,* 201 Kan. 528 [441 P.2d 802].)

*Tide-Water* is almost squarely in point. There the landowner proposed to construct a building over an oil pipeline easement, which would have required either encasing the pipeline or moving the pipeline. The court held the landowner had no right to construct a building over the pipeline easement, because such construction was an unreasonable interference with the easement. (202 A.2d at pp. 412-413.) The court further held that the builder must pay the cost of moving the pipeline since even encasing the pipeline underneath the building would be an unreasonable interference with the easement in terms of difficulty of access or repairs. (*Id.,* at p. 414.)

The language of the easement in *Tide-Water* was very similar to this case. It provided "that said pipe or pipes shall be so laid as not to interfere with the usual cultivation of the premises *nor with any buildings thereon*—and that all actual damage done to crops, timber or otherwise, by the construction or operation of said pipe lines shall be paid for in full by the said grantee. . . . [¶] And that the said grantors shall fully enjoy the said premises except for the purposes hereinbefore specified." (*Id.* at p. 407; italics added.) The court held that the language that the "grantors shall fully enjoy the said premises except for the purposes hereinbefore specified" did not entitle the landowner to build over the pipeline. (*Id.,* at p. 412.) The court also interpreted the language in the grant that the pipes "shall be so laid as not to interfere with the usual cultivation of the premises nor with any buildings thereon" to refer only to the buildings on the land at the time construction commenced. "We do not believe it can be reasonably construed, in the light of the balance of the instrument and all the surrounding circumstances, to imply a right to erect a building over the line subsequently." (*Id.,* at p. 413.)

In *Potter,* a farmer granted a pipeline easement " 'without divesting grantor of the right to use and enjoy said above described premises, subject only to the right of the grantee to use the same for the purposes herein expressed' " and the easement holder agreed " '[t]hat it will pay to grantor any damages which may arise to growing crops, trees, shrubbery, fences or *buildings* from the construction, maintenance or operation of said pipe line.' " (441 P.2d at p. 805; italics added.) The farmer proposed to level and grade the property and wanted the pipeline company to

lower the pipeline at its expense. The court held that notwithstanding the language of the agreement, the pipeline company was not required to pay the cost of lowering the pipeline. (*Id.,* at pp. 806-807.) The court relied heavily on the use of the property at the time the agreement was entered and stated that since it was the landowner who desired the new project for his own profit it was only fair that he pay its expense. To the same effect are *Minard Run Oil Company* v. *Pennzoil Company, supra,* 214 A.2d at page 236, and *Tenneco, Inc.* v. *May, supra,* 377 F.Supp. at page 944.

In this case the property had not been used more extensively than for horse stables and riding. It is plaintiff who desired a drastic change in the use of the property by construction of a manufacturing facility, warehouse, and offices on it. Under the circumstances we cannot interpret the agreement to mean that the Cities of Los Angeles and Glendale must reimburse plaintiff for his expenses of fulfilling his obligation not to interfere with the sewer easement. That is one of the costs of his project which he must bear.

## ORAL AGREEMENT

Although it is not specifically relied upon by plaintiff here as an alternative ground for upholding the judgment, the trial court's findings refer to an alleged agreement by a deputy city attorney that Los Angeles was liable for the costs, and therefore we comment briefly on this issue.

During the negotiations concerning the building permit, a meeting was held in February 1973 among plaintiff's realtor, Mr. Gulvin; plaintiff's contractor, Mr. Butler; a civil engineer from the Wastewater Design Division of the Bureau of Engineering of the City of Los Angeles, Mr. Scott; and a deputy city attorney of the City of Los Angeles, Mr. Carlow. Plaintiff's representatives advanced the theory that the wording of the 1925 agreement required Los Angeles to pay for the additional cost of straddling the sewer. On conflicting evidence, the trial court found that "it was agreed by the parties present that under the 1925 easement agreement, the City of Los Angeles was liable for and would pay the reasonable costs of building a support system over the sewer easement so that plaintiff's building would not impose a surcharge on the sewer." The court further found that "[i]mmediately after the meeting of February 26, 1973, plaintiff was advised that the City of Los Angeles would pay for the sewer support system. Within a few days after February 26, 1973, but prior to the issuance of building permits and in

reliance on the agreement of the City of Los Angeles to pay for the support system, plaintiff contracted with Integrated, Inc. for the preparation of plans, specifications and engineering work for his said building for an agreed upon price of $32,000.00."

One of the trial court's conclusions of law was that the City of Los Angeles is liable to plaintiff on the ground that "the City of Los Angeles agreed to pay additional construction costs which agreement was relied upon by plaintiff when plaintiff incurred engineering and design costs of $32,000.00."

■  The judgment cannot be supported on this theory. The deputy city attorney's oral statement at the February meeting could not bind the city to a $32,000 contract in violation of city charter provisions requiring such contracts to be in writing and signed by authorized persons following bidding procedures. (Los Angeles City Charter, art. XXVIII, §§ 385, 386.) Plaintiff's alleged reliance thereon cannot create an estoppel where application of estoppel against a governmental entity would result in nullification of a strong rule of policy adopted for the benefit of the public. (*State of California* v. *Haslett Co.,* 45 Cal.App.3d 252, 256-257 [119 Cal.Rptr. 78]; *Dynamic Ind. Co.* v. *City of Long Beach,* 159 Cal.App.2d 294, 298-299 [323 P.2d 768].)  ■  Furthermore, there is no evidence that plaintiff would have abandoned his project in the absence of the deputy city attorney's agreement that the extra costs be reimbursed by the city. Plaintiff's contractor testified that he knew from the beginning that something would have to be done to protect the sewer. He testified that he and plaintiff decided to go ahead with the project and then let the courts decide who would pay the extra costs.

It is unnecessary to discuss defendants' remaining contentions.

The judgment is reversed with directions to the trial court to enter judgment for defendants.

Kaus, P. J., and Stephens, J., concurred.