**COLUMBIA GAS TRANSMISSION, CORPORATION, Plaintiff– Appellee,**

v.

**LIMITED CORPORATION, Defendant–Appellant.**

**No. 91–5494.**

United States Court of Appeals, Sixth Circuit.

Argued May 11, 1991.

Decided Dec. 19, 1991.

---

Danny C. Reeves (briefed), John A. West (argued), James E. Davis, Greenebaum, Doll & McDonald, Lexington, Ky., Harry C. Bruner, Jr., Charleston, W.Va., for plaintiff-appellee.

David C. Stratton (argued and briefed), Stratton, May & Hays, Pikeville, Ky., for defendant-appellant.

Before GUY, Circuit Judge, BROWN, Senior Circuit Judge, and CHURCHILL, Senior District Judge.*

BAILEY BROWN, Senior Circuit Judge.

This is a diversity action for injunctive relief and compensatory damages arising from interference with and damage to natural gas pipelines. Limited Corporation ("Limited") appeals the denial of its motion to vacate, alter, or amend the district court's grant of summary judgment holding Limited liable for damages and for the costs of relocating portions of a pipeline system owned and operated by Columbia Gas Transmission Corporation ("Columbia Gas"). The parties agree that Kentucky law governs. For the following reasons, we agree with the district court's determination and AFFIRM.

I

In 1930, Kentland Coal & Coke Company ("Kentland") leased to Howe Oil & Gas Company ("Howe") the oil and gas rights in a tract of approximately 65,299 acres of real property, some of which is located in Pike County, Kentucky. The lease expressly provides that the oil and gas estate is servient to the lessor's coal estate.[1]

Limited, Kentland's successor in interest, currently engages contract miners to sur-

---

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. But for this provision in the lease, the oil and gas estate would be dominant to the grantor's surface and coal estate. *See Akers v. Baldwin,* 736 S.W.2d 294, 297 (Ky.1987).

face mine the Pike County property for coal. Columbia Gas, Howe's successor in interest under the lease, operates gas wells and a natural gas pipeline system on the same property. So that it may maintain, repair, and replace its pipelines, Columbia Gas has a 50–foot surface right-of-way above its lines.

This dispute involves Limited's damage to and the costs of relocating three Columbia Gas pipelines that were laid in 1960. In 1988, Limited asked Columbia Gas to move the pipelines temporarily to accommodate Limited's surface-mining operations, but Columbia Gas refused to do so unless Limited paid for the relocation. With the pipelines still in place, and despite Columbia Gas's warnings about the potential for creating a hazardous condition, Limited went forward with its plans. Using heavy diesel equipment, Limited crossed over and dumped debris against the pipelines, thereby rupturing two of the lines. The damage resulted in a significant loss of natural gas. In addition, Limited constructed a coal haul road and retaining bench that obstructed Columbia Gas's access for inspecting and repairing its pipelines.

Columbia Gas sought judicial relief in the form of an injunction and compensation for damage to the pipelines. Upon the district court's entry of an agreed preliminary injunction, the parties executed an agreement under which Limited deposited $69,-000.00 for the anticipated cost of installing road crossings and for other construction activities to protect the pipelines.[2] Limited then counterclaimed, seeking return of the $69,000.00 and an adjudication that Limited owed nothing for the damage and that Columbia Gas must relocate the pipelines at its own expense.

The parties filed cross-motions for summary judgment. Finding no genuine issues of material fact and ruling that Limited's activities amounted to a "trespass" on Columbia Gas's estate, the district court held that Limited is liable for the damage to the pipelines and for the costs of creating roadways over and relocating portions of the lines. *Columbia Gas Transmission Corp. v. Limited Corp.*, 759 F.Supp. 343, 352 (E.D.Ky.1990). It granted Columbia Gas's motion for summary judgment and denied Limited's. The court also denied Limited's motion to vacate, alter, or amend the ruling. This appeal followed.

## II

■ Limited's motion to vacate, alter, or amend the district court's grant of summary judgment in favor of Columbia Gas is properly considered a motion pursuant to Federal Rule of Civil Procedure 59(e). *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir.1982). Ordinarily, we review denial of such a motion for abuse of discretion. *Id.* When, however, a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we conduct de novo review. *See id.* at 122–23 n. 5. *See generally Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir.1991) (explaining procedure for district court's determination of summary judgment motion).

## III

Countering the district court's holding that Limited, the dominant estate holder, trespassed when it damaged the pipelines, Limited argues that, as servient estate holder, Columbia Gas trespassed by refusing to move its pipelines upon Limited's request. Limited also contends that because the original parties to the lease anticipated that the coal estate and the gas and oil estate might have conflicts resulting from the joint use of the land, the lease expressly provides a means of resolving disputes. In support of its contentions, Limited relies on the following provision of the Kentland–Howe lease:

> It is understood and agreed that the coal underlying the above described tracts of land is the dominant estate, and that the oil and gas estate shall be subservient thereto....

**2.** While not conceding that it should be required to move its pipelines, Columbia Gas has been willing to do so provided the expense thereof is paid for by Limited.

The rights granted to lessee hereunder for the construction of pipe lines, telephone and telegraph lines shall include occupation of the surface for temporary housing of employees, erection of small pumping units for the pumping of oil well[s], meter houses for housing and protection of meters, and yards for the storing of pipe, casing and other materials; all or any surface so occupied shall be vacated upon six months notice in writing should such surface be required for the operating of the coal mines.

J.App. at 254–55.

█ We find unconvincing Limited's interpretation of this provision. The lease names the lessor as the holder of the dominant estate, but it also grants the lessee the right to occupy the surface for certain purposes. Although this right is not without some restrictions, Limited's attempt to read into the provision an obligation for the lessee to pay for relocation of underground pipelines is disingenuous. The language merely provides that, upon six-months' notice, the lessee is required to vacate "all or any surface" occupied for housing of employees and for erection of certain structures. The provision upon which Limited relies does not address the situation at bar. We, therefore, must turn to case law to resolve the issue of who must bear the costs and expenses when, as the district court found, the owner of the dominant estate wishes to undertake a project that interferes with reasonable use by the owner of the servient estate.

## IV

█ It is clear that, under Kentucky law, a dominant estate holder enjoys rights that are correlative to the rights of a servient estate holder. *Central Kentucky Natural Gas Co. v. Huls*, 241 S.W.2d 986, 987 (Ky.1951). Furthermore, each estate holder owes a duty to "exercise that degree of care and use which a just consideration for the rights of the other demands." *Jenkins v. Depoyster*, 299 Ky. 500, 186 S.W.2d 14, 15 (1945). By carrying out its surface-mining operations in spite of knowledge that doing so would damage Columbia Gas's pipelines and subject others to risks of harm from the escape of natural gas, Limited breached its duty to avoid using its estate in a manner inconsistent with the rights of Columbia Gas. We need not decide whether, under Kentucky law, Limited's activities constituted a trespass on the servient estate. We do, however, affirm the ruling that Limited is liable for the repairs to the pipelines, the costs of action necessary to protect the pipelines, and the costs of moving them to accommodate Limited's coal mining activities.

█ Columbia Gas correctly observes, as did the district court, that *Akers v. Baldwin*, 736 S.W.2d 294 (Ky.1987), is applicable to the extent that it addresses the respective obligations and liabilities of owners of conflicting interests in land. Under *Akers*,

whenever the owner of minerals under a broad form deed in exercising the right to remove those minerals from under the surface, causes injury to the surface, the mineral owner shall respond in damages to the owner(s) of that surface. The sole exception would be where the conveyance expressly sets out the methods of mining that may be employed and a waiver of damages from the use of such methods.

*Id.* at 305. Limited does not contend that the Kentland–Howe lease contains a "broad form" reservation in favor of the grantor therein. Such a grant or reservation is defined in *Akers* as one "which severs the mineral estate from the surface estate and which has a long and tedious description of granted [or reserved] rights...." *Id.* at 298. Therefore, because, under *Akers*, the holder of the dominant estate under a broad form deed must pay damages for its injury to the servient estate, it cannot be gainsaid that Limited, whose rights are more restricted than those reserved under a broad form deed, must pay Columbia Gas for injury to its pipelines and for the costs of moving the lines to accommodate the surface extraction of coal. Because this lease does not expressly address what methods the lessor will use to extract coal, nor does it provide

for waiver of damages by the lessee, Limited is not immune from liability for injury to Columbia Gas.

In *Tenneco, Inc. v. May,* 377 F.Supp. 941 (E.D.Ky.1974), *aff'd,* 512 F.2d 1380 (6th Cir.1975), we find additional support for the district court's holding. In *Tenneco,* Judge Mac Swinford cited with approval two cases, *Potter v. Northern Natural Gas Co.,* 201 Kan. 528, 441 P.2d 802 (1968), and *Minard Run Oil Co. v. Pennzoil Co.,* 419 Pa. 334, 214 A.2d 234 (1965). These cases hold that, in this context, the party "who desires to alter the status quo for its benefit" must bear the expense of activities required to accommodate its operations. *Minard Run,* 214 A.2d at 235. In *Potter* and in *Minard Run,* a landowner wanting to increase the profitability of its estate sought to compel a pipeline company to pay for the lowering of pipes. In each case, the court held in favor of the pipeline company.

■ Just as this court affirmed in *Tenneco* upon finding the district court's reasoning to be persuasive, we do so here. In the instant case, the removal of the pipelines was occasioned by Limited's desire to make more beneficial use of its estate by the surface mining of coal. Neither the lease nor relevant case law mandates that Columbia Gas pay for the costs of accommodating Limited's needs. Borrowing the language of the *Minard Run* court, we conclude that "[t]he decision of the Court below answered every requirement of the law and represented justice and fairness—the true delectable fruits to be found in the orchard of equity." *Id.* As suggested by Judge Swinford in *Tenneco,* holding that Columbia Gas must pay to accommodate Limited's desire to change the status quo would contravene principles of equity and fairness. The district court did not err, therefore, in holding that Limited, which impinged on Columbia Gas's rights under the lease, is responsible for the damage to the pipelines and the costs of creating overpasses and moving the lines to prevent additional damage.

### V

Accordingly, regarding the payment of damages and the obligation for the costs and expenses of relocating the pipelines, we AFFIRM the judgment of the district court.