NOT DESIGNATED FOR PUBLICATION

No. 119,341

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

QUIVIRA CROSSING SHOPS, INC.,
*Appellant*,

v.

CITY OF LENEXA, KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed May 17, 2019. Affirmed.

*Michael J. Fleming*, of Kapke Willerth, LLC, of Lee's Summit, Missouri, for appellant.

*Peter C. Simonsen*, assistant city attorney, and *MacKenzie C. Harvison*, deputy city attorney, for appellee.


Before LEBEN, P.J., BUSER and STANDRIDGE, JJ.


PER CURIAM: This appeal arises from a dispute over the interpretation of an easement granting the City of Lenexa, Kansas, the right to "lay, construct, maintain, alter, repair, replace, and operate a storm sewer and surface drainage" on property owned by Quivira Crossing Shops, Inc. (QCS). Decades after the easement was executed, a storm sewer pipe under the property owned by QCS began to deteriorate, which caused a sinkhole to develop in the parking lot. As a result, QCS filed a petition in district court (1) seeking a judgment declaring that the City is the party responsible to maintain, alter, repair, or replace the deteriorated section of the metal storm sewer pipe located within the

1

utility easement and (2) alleging the City breached the terms of the easement between it and QCS by refusing to maintain and repair the metal storm sewer pipe contained within the utility easement. The parties filed cross-motions for summary judgment, and the district court ultimately granted judgment in favor of the City. QCS appeals, claiming that the district court erred by finding the language of the easement clearly and unambiguously granted the City permissive rights to maintain, alter, repair, or replace the storm sewer pipe without imposing an affirmative duty to repair and maintain it. QCS also claims that even if the district court correctly determined that the easement imposes no affirmative duty on the City to repair or maintain the pipe, it erred by failing to make further findings and apply the common law to determine that the City, as the beneficiary and holder of the easement, was obligated to repair the pipe. Finding no error, we affirm the decision of the district court.

FACTS

The facts in this case are undisputed. In the early 1980s, an entity known as 87th & Quivira Associates, L.P. (the Developer) began to develop a tract of land located on the northeast corner of 87th Street Parkway and Halsey Street in Lenexa, Johnson County, Kansas (the Property). Prior to development, a natural drainage ditch bisected the Property draining water from properties to the east and south. As part of the development, the Developer installed a 36-inch wide corrugated metal storm sewer pipe (the Pipe) in the natural drainage ditch underneath the Property. Like the natural drainage ditch, the Pipe bisects the Property from north to south and allows storm water to drain from properties to the east and south. In conjunction with installation of the Pipe, the Developer executed a utility easement (the Easement) in favor of the City "to lay, construct, maintain, alter, repair, replace, and operate a storm sewer and surface drainage, together with the right of ingress and egress over and through [the Property]."

In 1992, QCS purchased a fee simple interest in the Property. The Property contains a retail strip mall that is made up of three separate buildings, all of which are connected by a large, surface level parking lot. The Pipe runs underneath the parking lot. In March 2017, a sinkhole began to develop in the parking lot. QCS determined the cause of the sinkhole to be deterioration of the Pipe that runs underneath the surface of the parking lot.

QCS ultimately filed a petition in Johnson County District Court seeking: (1) a declaratory judgment that the clear and unambiguous language of the easement imposes a duty on the City to repair the Pipe and (2) a judgment that the City's failure to fix the Pipe constituted a breach of contract, thereby entitling QCS to compensatory damages. Following discovery, the parties filed competing motions for summary judgment. A hearing was held, and the district court took the matter under advisement.

A few weeks after the hearing, the district court ruled from the bench that the clear and unambiguous language of the Easement granted permissive rights but imposed no duty on the City to repair or fix the Pipe within the Easement. Because the Easement imposed no duty on the City, the district court found no breach of contract. The district court granted the City's motion for summary judgment and denied the opposing motion submitted by QCS. The district court based its ruling solely on the language of the Easement and did not consider any of the extrinsic evidence presented by the parties at the prior hearing.

After issuing its ruling, the district court asked the City to submit a proposed journal entry of judgment. It did so, and QCS timely objected. Specifically, QCS wanted the district court's journal entry to make factual findings and apply the common law to determine who was responsible for maintaining and repairing the Pipe. After a hearing on the issue, the district court overruled QCS's objections and approved the City's proposed journal entry.

STANDARD OF REVIEW

The summary judgment standard is well established in Kansas.

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

Where, as here, there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). When an appeal involves the interpretation and legal effect of a written instrument, it is a matter of law over which appellate courts exercise unlimited review. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1207, 308 P.3d 1238 (2013); see also *City of Arkansas City v. Bruton*, 284 Kan. 815, 828-29, 166 P.3d 992 (2007) ("Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect.").

ANALYSIS

QCS argues the district court erred in holding that the Easement grants a right, but not a duty, upon the City to repair the Pipe. Alternatively, QCS argues the district court erred by failing to make findings of fact to support its common-law claim that the City's

failure to fix the Pipe constituted a breach of contract, the contract being the Easement. We address each of QCS's claims in turn.

By definition, an easement is an interest that one person has in the land of another. *Mid-America Pipeline Co. v. Wietharn*, 246 Kan. 238, 248, 787 P.2d 716 (1990) (citing *Potter v. Northern Natural Gas Co.*, 201 Kan. 528, 530, 441 P.2d 802 [1968]). "'[T]he character and extent of the rights created by a grant of easement is determined by construction of the language of the grant and by the extent of the use made of the dominant tenement at the time of the grant.' [Citations omitted.]" *Bruton*, 284 Kan. at 829. If the easement's language is clear and unambiguous such that it can be carried out as written, then rules of construction are not necessary. 284 Kan. at 829; see also Restatement (Third) of Property: Servitudes § 4.1(1) (2000) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.").

Having set forth the applicable rules, we now consider the Easement at issue in this case, which provides in relevant part:

> "WHEREAS, the [City of Lenexa] desires an easement for the construction and maintenance of storm sewers and surface drainage. NOW, THEREFORE, in consideration of One and no/100 Dollars ($1.00) in hand paid and other valuable consideration, receipt of which is hereby acknowledged, [87th & Quivira Associates, L.P.] does hereby grant and convey unto the [City of Lenexa], its successors and assigns, an easement to lay, construct, maintain, alter, repair, replace, and operate a storm sewer and surface drainage, together with the right of ingress and egress over and through the following premises in the County of Johnson and the State of Kansas, to-wit: [the Property]."

QCS argues the plain language of the Easement authorizing the City to maintain, repair, and replace the storm sewer to facilitate surface drainage reflects the parties' original intention to impose a mandatory duty on the City to do so. Specifically, QCS asserts that if the parties intended the City's maintenance, repair, and replacement of the storm sewer to be permissible and not mandatory, that language would be rendered superfluous. In support of its assertion that the word "maintenance" when used in an easement must be construed as a mandatory duty, QCS cites to our Supreme Court's opinion in *Bruton*. In *Bruton*, the defendant owned a plot of land within the city of Arkansas City. The property was subject to a 1935 easement in favor of the city for flood protection. The city constructed a dike and exclusively maintained and repaired the dike over a period of 65 years. The dike benefited the city, not the property owner. The city wanted to replace the dike with a more modern design, and the property owner objected. The court found the easement was unambiguous and enforceable on its face, and the city had the right to repair and maintain the dike it constructed. 284 Kan. at 847-48.

But *Bruton* is factually distinguishable from the case at hand, most notably because it deals with a city's attempt to exercise its permissive right to act under the terms of an easement. In *Bruton*, unlike the facts here, the city was the entity that built the dike in the first place and the city exclusively maintained and repaired the dike over the 65-year period after it was built. *Bruton* also is legally distinguishable from the case at hand. Specifically, the court in *Bruton* was not presented with, nor did it decide, any issue regarding a duty imposed by the easement. The issue in *Bruton* was whether the city had a right under the terms of the easement to replace the dike with a more modern design. The issue in this case, however, is whether the City has a mandatory duty under the terms of the Easement to repair a damaged Pipe, irrespective of the fact the Pipe was built by the Property owner as part of a private development and the fact that the City had never maintained, repaired, or otherwise dealt with the Pipe since its installation by that Property owner.

6

QCS also cites to *Potter* in support of its position that the parties intended the Easement to impose a mandatory duty upon the City to maintain, repair, and replace the storm sewer. In that case, the gas company installed a gas pipe on Potter's property. The property was subject to a pipeline easement in favor of the gas company. The gas pipe easement contained language stating that Potter could "use and enjoy" his land subject to the terms and conditions of the easement. 201 Kan. at 531. The gas company agreed it had an affirmative, ongoing maintenance obligation with regard to the gas pipe. The gas company also agreed that the existence of the gas line exclusively benefited the gas company.

At some point, Potter wanted to regrade his property for his own commercial benefit. Potter claimed the language in the easement required the gas company to lower its pipe so he could regrade the property. Specifically, Potter argued that if the gas company did not pay to lower the gas pipe, he would be divested of his ability to use and enjoy the property. He also argued that the gas company's duty to maintain the pipe that it had constructed included moving the gas pipe. The Kansas Supreme Court ultimately held the language of the easement did not create an affirmative duty on the part of the gas company to move the gas pipe. The court held:

> "To require the pipeline company to pay this [moving] expense would have the effect of inserting an additional provision in the original grant requiring the grantee to furnish additional consideration for the rights granted and received by it in 1950. A court may not make an agreement for the parties which they did not make themselves." 201 Kan. at 532.

Once again, we find the facts of the case cited by QCS to be factually distinguishable from those presented here. Unlike the facts here, the gas company was the entity that built the gas pipe in the first place. The gas company readily acknowledged it had an affirmative, ongoing maintenance obligation with regard to the gas pipe. The gas company also acknowledged that the existence of the gas line exclusively benefited the

7

gas company. And the issue presented for the court's decision in *Potter* was whether the gas company's refusal to pay to move the gas pipe divested Potter of his ability to use and enjoy the property. Unlike the *Potter* case, the ability of QCS to use and enjoy the land is not a relevant issue here. Again, the issue in this case is whether the City has a mandatory duty under the terms of the Easement to repair the damaged Pipe, irrespective of the fact the Pipe was built by the Property owner as part of a private development and the fact that the City had never maintained, repaired, or otherwise dealt with the Pipe since its installation by that Property owner.

In sum, we affirm the district court's decision to grant summary judgment in favor of the City based on its finding that the clear and unambiguous language of the Easement grants a right, but not a duty, upon the City to repair the damaged Pipe. Because the Easement's language is clear and unambiguous such that it can be carried out as written, then rules of construction are not necessary and the district court did not err by declining to analyze the issue of duty under principles of common law. See *Bruton*, 284 Kan. at 829; see also Restatement (Third) of Property: Servitudes § 4.1(1) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.").

Affirmed.

* * *

LEBEN, J., concurring: The parties have mainly engaged in a semantic debate: Quivira Crossing Shops contends that the plain language of the easement puts mandatory duties on the City of Lenexa; the City contends that the easement permits it to do things but doesn't require any City action. The reality is that the City's duties depend on factual

8

context. But under the facts of our case, the City has no duty to repair a stormwater pipe the City didn't install or maintain.

Unless parties to an easement explicitly provide otherwise, the beneficiary of an easement (here, the City) has the ability to use the easement but no requirement that it do so. So the obligation to repair some object within the easement area doesn't arise unless the easement beneficiary has first made use of the easement. See Restatement (Third) of Property: Servitudes § 4.13 and § 4.13, comment b (2000). Here, Quivira Crossing Shops admits that its predecessor (the property developer), not the City, installed the stormwater pipe. And with no evidence the City has done any maintenance or repair on this failing piece of pipe, there's no duty on the part of the City to fix the problem.

So the language in this easement could result in a duty on the City—if the City first uses the easement to its benefit. In that case, the City would have a duty to make repairs or do maintenance based on the City's use of the easement. See Restatement (Third) of Property: Servitudes § 4.13, comment b. Here, though, the City has done nothing beyond inspection, and Quivira Crossing Shops hasn't claimed that the City's inspections have in any way contributed to the sinkhole in its parking lot.

In sum, the uncontroverted evidence submitted on summary judgment showed that the failing stormwater pipe was installed by Quivira Crossing Shops' predecessor in ownership of the property, not the City. Unsurprisingly in this situation—in which the City did nothing to cause the sinkhole in the parking lot—the City has no responsibility to fix it. I therefore agree with the majority's conclusion and join in affirming the district court's judgment.