14 F.3d 601
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Pamela L. McGEE, Plaintiff-Appellant,
v.
GENESCO, INC.; Jim Hardin; and Jim Hale, Defendants-Appellees.
 No. 92-6230.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1994.
 
 1
 Before: MARTIN and BOGGS, Circuit Judges; and JOINER, Senior District Judge.*
 
 
 2
 CHARLES W. JOINER, Senior District Judge.
 
 
 3
 Plaintiff Pamela McGee appeals from the entry of summary judgment in favor of her former employer, Genesco, Inc.; her former supervisor, Jim Hardin; and his supervisor, Jim Hale; in this Title VII action asserting gender-based discrimination and retaliation in her discharge from employment. We affirm the judgment of the district court.
 
 I.
 A.
 
 4
 We first set forth a brief procedural history of the case. McGee filed a charge of discrimination with the Equal Employment Opportunity Commission after she was discharged, and the EEOC subsequently determined that defendants had not discriminated against her. McGee then filed a timely pro se complaint in July 1991, alleging both discrimination and retaliation. Defendants moved for summary judgment in December 1991, and supported their motion with affidavits, a statement of undisputed facts, and a memorandum of law. Plaintiff responded with only the affidavit of her husband. This affidavit consists largely of hearsay and taken alone would be insufficient to defeat defendants' motion.
 
 
 5
 On February 18, 1992, an attorney filed an appearance on plaintiff's behalf, along with a motion requesting that the court reserve ruling on the motion for summary judgment and set a scheduling order for discovery. Defendants opposed the motion, and on March 19, 1992, the court granted defendants' motion for summary judgment, and ruled that plaintiff's motion was therefore moot.
 
 
 6
 Plaintiff's attorney then filed a timely motion to alter or amend the judgment under Fed.R.Civ.P. 59(e), a motion requesting a hearing, and a motion for leave to file affidavits in support of the motion to alter or amend the judgment. The court granted leave, and counsel ultimately filed seven affidavits in opposition to the motion for summary judgment. The court held a hearing, but adhered to its original decision.
 
 B.
 
 7
 McGee was hired as the purchasing manager for Genesco's printing division, Genesco Graphics, in October 1989. She was hired to replace a woman who had held that position, and was replaced by a woman after her discharge nine months later on July 16, 1990. McGee's version of her history with Genesco emphasizes the problems she encountered and the efforts she made to perform satisfactorily. The following factual summary is based on affidavits filed in support of McGee's Rule 59 motion.
 
 
 8
 McGee claims that she found problems in the purchasing department as soon as she started working and corrected many of them. McGee asserts that two male fellow employees behaved in an insubordinate and disrespectful manner toward her on a number of occasions and that the men were not disciplined for their behavior. In February 1990, the graphics division manager became irate over a payment problem and screamed at McGee and kicked her desk. She reported the situation to his supervisor, defendant Hale, and the manager resigned a few days later. Defendant Hardin then became the division manager, reporting directly to Hale.
 
 
 9
 McGee states that Hale emphasized cost-containment and that he complimented her on keeping the purchases down, thereby contributing to a $20,000 profit. In June 1990, McGee was given a work conduct memo by Hardin, her immediate supervisor, itemizing several deficiencies in her performance. The memo was prompted by a co-worker's complaint that McGee did not provide her with pricing information; McGee claims that she was in the middle of a rush project and simply told the co-worker that she would have to obtain the information herself. The memo reflects Hardin's dissatisfaction with McGee's performance in a number of areas, and specifically with the fact that McGee's confrontation with her co-worker was witnessed by several customers.
 
 
 10
 McGee claims that Hale visited the printing division frequently during Hardin's subsequent vacation and threatened her job. "He said I needed to be 'more of a bitch' in one meeting and I was humiliated." After experiencing another incident of disrespectful behavior from a fellow employee, McGee stayed late to make copies of her work to prove that she was doing a good job. Employee Pat Parker asked her what she was doing, and she told him she was going to the EEOC the next day, Friday, July 13. McGee claims that she telephoned Parker and asked him not to tell Hardin that she was going to the EEOC. McGee did not actually visit the EEOC on July 13, but simply telephoned the EEOC office and reported her concerns. Nonetheless, she did not report for work that day.
 
 
 11
 On Monday, July 16, McGee reported for work and was immediately taken into Hardin's office and discharged. Hardin said that it was Hale's idea and that he regretted having to fire her, but would have to lie if she repeated his statement in court. McGee claims that Hardin told her that Hale would have fired her even if she had done a perfect job. McGee states that Hale telephoned Hardin in the middle of their discussion, and asked Hardin if she still intended to pursue an action with the EEOC.
 
 
 12
 McGee's factual report in support of the Rule 59 motion included the affidavits of three vendors of Genesco, one of whom testified that she witnessed what she characterized as abusive and disrespectful behavior toward McGee by two male employees, but did not specify what those employees did or said. The others set forth their opinions that McGee was competent and professional. McGee also submitted an affidavit from former co-worker Evelyn Faulkner, who stated generally that Genesco treated men better than women. As evidence, Faulkner claimed that she was passed over for a management promotion in favor of a less competent male, and that Pat Parker spent several hours a day on personal phone calls but was not discharged. According to Faulkner, McGee was doing a good job even though she was placed under tremendous scrutiny by the defendants.
 
 
 13
 Genesco supplements the history of McGee's tenure, pointing out that her performance had been deficient for some time before she was discharged. Hardin testified that McGee's lack of qualifications for her position were evident to him months before he became the manager of the division. Hardin testified that he monitored McGee's performance, and informed her on several occasions between April and July 1990 that she was not satisfactorily performing her job duties. Hardin explained the reason for the June 26 memo, stating that McGee had earlier in the month overlooked unpaid statements from one vendor totalling $8000, and had refused to provide pricing information to a co-worker. McGee then "berated both the individual who reported the incident and myself, refused to listen to my directives, and walked out of my office in the middle of the meeting." By this time, it had become evidence to Hardin that McGee had lost credibility with her fellow employees and that there was no realistic prospect for improvement.
 
 
 14
 Shortly thereafter, Hale conducted a spot audit, comparing purchase orders to invoices. He found that approximately 80 per cent of the invoices differed from the purchase orders, meaning that 80 per cent of the purchases handled by McGee had errors of some sort. Hale determined that McGee had to be terminated, and told Hardin on July 12 to fire her on July 13. McGee did not report for work on July 13, so her termination took place on July 16. Both Hardin and Hale denied any knowledge prior to McGee's termination that she had contacted the EEOC on July 13. Pat Parker denied that McGee had informed him of her plan to visit the EEOC office on July 13.
 
 C.
 
 15
 The district court originally granted defendants' motion for summary judgment, holding that McGee had not made out a prima facie case of either gender-based discrimination or retaliation. The court held that McGee's discrimination claim failed due to her inability to show that she was qualified for her position, and that her retaliation claim failed because she had not demonstrated that defendants were aware of her visit to the EEOC. The court further held that even if it were to determine that McGee had made out a prima facie case, summary judgment was warranted because she had not come forward with evidence to demonstrate that defendants' legitimate, nondiscriminatory reason for her discharge was pretextual. The court denied McGee's motion for rehearing, adhering to its view that McGee had not demonstrated that defendants' stated reason for her discharge was pretextual.
 
 II.
 A.
 
 16
 "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a grant of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and will affirm if there is no genuine issue of material fact. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 17
 McGee argues that summary judgment should not ordinarily be granted before discovery has been completed, particularly when constitutional and civil rights claims are at issue, citing Tarleton v. Meharry Medical College, 717 F.2d 1523, 1535 (6th Cir.1983). However, the district court has broad discretion to balance the needs and rights of the parties. In reviewing a district court's decision to limit discovery, this court will intervene only if the court's decision was an abuse of discretion resulting in substantial prejudice. Elvis Presley Enter. v. Elvisly Yours, Inc., 936 F.2d 889, 893 (6th Cir.1991).
 
 
 18
 We have reservations regarding the district court's original grant of summary judgment, entered, as it was, shortly after McGee secured counsel and requested additional time for limited discovery. McGee's inability to present her case adequately prior to retaining counsel is evident from her initial response to defendants' motion. Nonetheless, by opening the record and granting McGee a hearing on her Rule 59 motion, the district court effectively placed McGee in the same position she occupied before it granted summary judgment. Moreover, McGee's appeal from the denial of that motion will be reviewed de novo, just as an immediate appeal from the grant of summary judgment would have been. Columbia Gas Transmission Corp. v. Limited Corp., 951 F.2d 110, 112 (6th Cir.1991).
 
 
 19
 While McGee repeats her claim that she was entitled to conduct discovery before the district court entertained defendants' motion, McGee did not inform the district court precisely what discovery was needed. She is likewise silent in this court. At least fifteen affidavits were part of the record on McGee's Rule 59 motion, in addition to various EEOC and personnel documents. Given these facts, it was incumbent on McGee to substantiate her claimed need for discovery. See Fed.R.Civ.P. 56(f).
 
 
 20
 Thus, we are not persuaded that the manner in which the district court ultimately entered judgment against McGee constituted an abuse of discretion or that McGee suffered substantial prejudice. We proceed then to review McGee's substantive claims.
 
 B.
 
 21
 Section 703(a)(1) of Title VII, 42 U.S.C. Sec. 2000e-2(a)(1), prohibits an employer from discharging an employee because of that employee's sex. To establish a prima facie case of discrimination, a plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was discharged; (3) was qualified for the position; and (4) was replaced by a person outside the class. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2747 (1993); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992).
 
 
 22
 Because McGee was replaced by a woman, she cannot satisfy the fourth element of her prima facie case. As an alternative, McGee could attempt to establish a prima facie case by demonstrating that defendants treated a comparable non-protected person better for the same or similar conduct.
 
 
 23
 It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.
 
 
 24
 Mitchell, 964 F.2d at 583 (emphasis in original; citations omitted).
 
 
 25
 McGee has not established a prima facie case of disparate treatment. While McGee relies on the fact that a male manager was not discharged for making personal phone calls, this conduct differs markedly from the performance problems which were the stated reasons for McGee's discharge: e.g., overlooking statements totalling $8000; an 80% error rate on purchases; and lack of respect for her supervisor and fellow employees. Nor is McGee's claim aided by Faulkner's assertion that she (Faulkner) was passed over for a management promotion, due to the fact that McGee was hired into a management position, and was preceded and followed in that position by women.[1]
 
 
 26
 Moreover, the establishment of a prima facie case merely creates a rebuttable presumption of discrimination which drops out of the picture once the defendant articulates a legitimate, nondiscriminatory reason for its actions. St. Mary's Honor Ctr., 113 S.Ct. at 2749. At that point, the plaintiff, who at all times bears the ultimate burden of persuasion, must prove that the defendant's explanation for its action was a pretext for discrimination. Id. at 2749, 2752. As correctly noted by the district court, McGee produced no evidence in support of her claim that defendants' stated concern about her error rate in purchasing and her difficulty with her fellow workers was a pretext for discrimination. While three vendors and a co-employee expressed their opinions that McGee performed her duties capably, it was uncontested that these individuals were not in a position to evaluate McGee's performance knowledgeably, especially with respect to the problems identified by defendants. Thus, the affidavits of these individuals were insufficient to create a genuine issue of fact on the issue of pretext. Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 316 (1989).
 
 
 27
 We conclude that the district court's entry of judgment against McGee on her discrimination claim was proper.
 
 C.
 
 28
 Section 704(a) of Title VII, 42 U.S.C. Sec. 2000e-3(a), prohibits an employer from retaliating against an employee because she has opposed an unlawful employment practice; or made a charge; or participated in an investigation, proceeding or hearing related to Title VII. In order to establish a prima facie case of retaliatory discharge, a plaintiff must prove that: (1) she engaged in protected activity; (2) this exercise of protected rights was known to defendant; (3) the defendant thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.[2] Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir.), cert. denied, 498 U.S. 984 (1990).
 
 
 29
 We conclude that McGee did not make out a prima facie case of retaliation due to her failure to demonstrate a causal connection between her telephone call to the EEOC and her discharge. The evidence is undisputed that Hale made the decision to discharge McGee on July 12, and instructed Hardin to do so the next day. There is no evidence that either of them knew about McGee's planned trip to the EEOC when the discharge decision was made.
 
 
 30
 Moreover, even if we were to assume that McGee established a prima facie case, her claim would fail for the same reason discussed with respect to her discrimination claim, her inability to demonstrate that defendants' explanation for her discharge was a pretext for retaliation. In sum, we are presented with no basis on which to disturb the judgment of the district court.[3]
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 McGee's assertion that she was treated disrespectfully by two male employees, termed "harassment" in her brief to this court, does not set forth an actionable claim for sexual harassment. McGee does not claim that these employees behaved better with men than with her, does not allege that their remarks were gender-based, and does not claim that their behavior was pervasive and consistent. The facts asserted, accepted as true, do not demonstrate a workplace "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'[.]" Harris v. Forklift Sys., Inc., 62 U.S.L.W. 4004, 4005 (1993) (internal citations omitted)
 
 
 [2]
 An employee must exhaust administrative remedies prior to filing suit in federal court and, as noted, McGee's EEOC charge makes no reference to a retaliation claim. However, the district court may adjudicate all charges "reasonably expected to grow out of the charge of discrimination.' " Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir.1992) (quoting EEOC v. Bailey Co., 563 F.2d 439, 446 (6th Cir.1977), cert. denied, 435 U.S. 915 (1978); Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir.1991). McGee's retaliation claim was within the scope of the EEOC investigation that reasonably would be expected to grow out of McGee's charge, and the record reflects that the claim was in fact investigated by the EEOC
 
 
 [3]
 We nonetheless decline to award damages, as defendants request, under Fed.R.App.P. 38