54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 PERE MARQUETTE ROD & GUN CLUB, Plaintiff-Appellant,
and
L. William Sessions and David M. Sessions, Intervening
Plaintiffs-Appellants,
v.
F. Dale ROBERTSON, in his official capacity as Chief of the
United States Forest Service; Mike Espy, in his
official capacity as Secretary of
Agriculture; and the United
States, Defendants-Appellees.
 No. 93-2607.
 United States Court of Appeals, Sixth Circuit.
 May 18, 1995.
 
 Before: CONTIE, RYAN, and SILER, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiffs appeal from the district court's judgment for the defendants in this action challenging the validity of the defendants' plan to implement an improvement project on a 47-acre tract of land called the Clay Banks Site, located on federal land adjacent to the plaintiffs' private property. The plaintiffs raise a multitude of issues, which we consider can properly be reduced to three: 1) whether the district court erred when it concluded that the Clay Banks Site Improvement Project Plan was valid; 2) whether the district court erred when it failed to conduct a hearing to determine whether agency employees had acted in bad faith; and 3) whether the district court erred when it denied the plaintiffs' motion to retain jurisdiction of this matter. We conclude that the plaintiffs' assignments of error are without merit and affirm the district court's judgment.
 
 I.
 
 2
 The Pere Marquette River is a beautiful and scenic waterway flowing through western Michigan. The subject of this present dispute is a location on the river known as the Clay Banks Site. The topography of this site is unique along the river. For a length of several hundred feet, the north bank of the river comprises a "cliff"approximately 100 feet high with a 52% grade. From the top of the cliff, one experiences a beautiful, panoramic view of the river and surrounding countryside. The area around the Clay Banks Site is owned by the federal government and comprises 47 acres primarily contained within a regular square; the Clay Banks Site itself is contained in an irregular small area that juts out from the square. This small area, running about 900 feet along the river, is the only river frontage under federal jurisdiction. Adjacent to the federal land and to the west is the Pere Marquette Rod and Gun Club's property. The Sessionses' property is to the east. Both the club's land and the Sessionses' land have considerably more river frontage than the federal property.
 
 
 3
 In 1968, Congress passed the Wild and Scenic Rivers Act, 16 U.S.C. Sec. 1271 et seq. In 1978, a section of the Pere Marquette River, which includes the Clay Banks Site, was designated as part of the Wild and Scenic Rivers System covered by the Act. See 16 U.S.C. Sec. 1274(a)(16).
 
 
 4
 From 1983 to 1990, there was a dramatic increase in the use of the river. The primary problem was the vast number of anglers who descended upon the river during the steelhead run and the chinook salmon run. As a result, the plaintiffs experienced considerable trespassing and vandalism. In 1990, the Forest Service began to do something about the condition of the Clay Banks Site. On February 3, 1992, District Ranger Owen Gusler adopted what was known as the Clay Banks Site Project Plan to ameliorate the trespassing and vandalism on the plaintiffs' property; the plan was one of several alternatives that had been discussed with plaintiffs. In fact, Gusler modified the plan slightly after objections were registered by plaintiffs.
 
 
 5
 The plaintiffs were not satisfied and appealed the project plan to Forest Supervisor Kelley, who affirmed the plan. The plaintiffs then appealed the plan to Regional Forester Floyd Marita. Marita modified the project plan so that the enforcement of the new rules included in the plan could be monitored to see whether the plan was properly addressing the concerns raised by the plaintiffs. This modification and Marita's comments are important in this case because they demonstrate the level of concern the Forest Service had for the plaintiff's complaints. Regional Forester Marita's conclusion was the final act of the Secretary of Agriculture, and the club brought the present suit on February 8, 1993; subsequently, the Sessionses intervened as plaintiffs.
 
 
 6
 The parties made cross motions for summary judgment. The district court granted judgment for the defendants and issued a well-reasoned and carefully prepared opinion. The plaintiffs then timely filed a notice of appeal.
 
 II.
 
 7
 The court's review of a grant of summary judgment is de novo; it uses the same test as used by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir. 1991), cert. denied, 114 S. Ct. 609 (1993). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Under Fed. R. Civ. P. 56(c), summary judgment is proper if all the evidence before the district court "'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law."' Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed. R. Civ. P. 56(c)).
 
 
 8
 The Administrative Procedures Act, 5 U.S.C. Sec. 706, establishes different standards of review for different aspects of administrative agency action. When reviewing agency fact-finding on the record, the court's duty is to determine whether the agency's findings are supported by substantial evidence; that is, whether the record contains relevant evidence that a "reasonable mind" would accept as adequately supporting the finding. Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951).
 
 
 9
 Section 706(2)(A) directs courts to review agency decisions under an arbitrary and capricious standard. This court has very recently announced two standards on which to judge whether a finding is arbitrary or capricious. In Lansing Dairy, Inc. v. Espy, 39 F.3d 1339 (6th Cir. 1994), we relied upon Supreme Court precedent to declare:
 
 
 10
 [U]nder the arbitrary and capricious standard the scope of review is a narrow one. A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ....
 
 
 11
 Id. at 1355 (citations and internal quotations omitted).
 
 III.
 
 12
 The plaintiffs attack the Forest Service project plan on three grounds: 1) that the project plan contradicts the unambiguous language of Sec. 1274(a)(16), which declares that the development plan created for the Pere Marquette River must take into account potential damage from overuse of the river; 2) that the agency exceeded its authority when it created the project plan because the plan is consistent with a recreational river but not a scenic river, which the Pere Marquette was designated; and 3) that the project plan's purpose or intent is to increase the number of anglers on the river. The plaintiffs reason that because the agency accepts that the river is already overused, a plan to further that overuse must be irrational, arbitrary, and capricious.
 
 
 13
 The district court, The Honorable Robert Holmes Bell, concluded that all of the plaintiffs' attacks on the project plan must ultimately fail. Judge Bell set forth his analysis and conclusion in a scholarly and very well-reasoned opinion. We find no need to repeat here what the district court has done so well, and upon which we cannot improve. We conclude that the project plan was valid for the reasons set forth in the district court's opinion, which we adopt as our own.
 
 IV.
 A.
 
 14
 The plaintiffs' final two assignments of error address decisions of the district court, not of the agency. The plaintiffs first argue that under the circumstances of this case, the district court erred when it failed to hold a hearing to determine the issue of Ranger Gusler and Supervisor Kelley's bad faith.
 
 
 15
 The Supreme Court, in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415 (1971), instructed federal courts to examine the "mental process" of the agency personnel only upon a "strong showing of bad faith or improper behavior." We review this assignment of error under the standards for summary judgment. The issue to be decided is whether the plaintiffs have demonstrated the existence of a genuine issue of material fact such that summary judgment for the defendants was inappropriate.
 
 
 16
 Clearly there is at least one disputed fact: affidavits for the plaintiffs indicated that some comments had been made by the two agency employees which could demonstrate some bad faith on their part. The agency employees denied that the statements were made. Whether that fact is "material" within the meaning of the summary judgment rule, Fed. R. Civ. P. 56, is decided with reference to the law governing the review of administrative action, which holds that the plaintiffs must make a "strong showing" of bad faith or improper motive.
 
 
 17
 The proper analysis to determine whether the plaintiffs have made a strong showing balances two sources of evidence of bad faith: 1) whether the agency may be said to be irrational; and 2) the strength of the external evidence of bad faith; that is, evidence from outside the administrative record. See, e.g., Latecoere Int'l v. United States Dep't of Navy, 19 F.3d 1342 (11th Cir. 1994); City of Mount Clemens v. United States Environ. Protection Agency, 917 F.2d 908 (6th Cir. 1990).
 
 
 18
 We conclude that the district court did not err when it determined there was no genuine issue of material fact regarding the bad faith of the ranger and forest supervisor. The extrinsic evidence offered by the plaintiffs was affidavits that alleged that the ranger had made some negative comments to the plaintiffs to the effect that the government would eventually take their land from them. Also, the affidavits allege that Supervisor Kelley has a picture on his desk that shows him and another man fishing on what appears to be the club's property. The defendants' affidavits deny the comments by Ranger Gusler and allege that the photograph of Supervisor Kelley was "cropped" for display so that the fullpicture would have shown that the men were standing in the river, not on the club's property, when the picture was taken. The plaintiffs offer no evidence that Regional Forester Marita had any animus toward the plaintiffs. The regional forester's clear concern for the plaintiff's interests is evidenced, among other things, by his modification of the project plan at the plaintiffs' request. Because the plaintiffs offer no evidence whatsoever to suggest bad faith by the regional forester, they have failed to make the required "strong showing" that the agency's decision was made in bad faith. Consequently, we conclude that the district court did not err.
 
 B.
 
 19
 The plaintiffs next argue that the district court erred when it denied their motion to reconsider judgment, in which they asked the district court to retain jurisdiction over the case. Federal Rule of Civil Procedure 59(e) allows parties to move for alteration or amendment of a court's final judgment. Generally, this court reviews a denial of a motion under Rule 59(e) for an abuse of discretion. However, if the underlying judgment was a summary judgment, then this court reviews the denial of the motion de novo. Columbia Gas Transmission Corp. v. Limited Corp., 951 F.2d 110, 112 (6th Cir. 1991).
 
 
 20
 The district court denied the plaintiffs' Rule 59(e) motion because the court concluded that if the plan proved to be problematic, then the plaintiffs could seek administrative review and after that could seek review in the district court. Regional Forester Marita's modification of the project plan specifically orders a review process that willresult in a report being submitted after a year. The regional forester has indicated that if that report indicates that the problems of trespassing and vandalism on plaintiffs' properties have not improved or have increased, the plan would be modified. In light of this administrative record, the plaintiffs' have an adequate initial remedy with the Forest Service if the project plan proves to be a failure. Accordingly, we conclude the district court did not err.
 
 V.
 
 21
 For these reasons, the judgment of the district court is AFFIRMED.