61 F.3d 903
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DYNAMIC CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,
v.
VILLAGE OF ARCHBOLD, Defendant-Appellee.
 No. 94-3023.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1995.
 
 Before: JONES, NELSON, and RONEY, Circuit Judges.*
 PER CURIAM.
 
 
 1
 Plaintiff Dynamic Construction Company, Inc. ("Dynamic") is appealing a district court's decisions granting Defendant Village of Archbold's ("Archbold") Motion for Judgment on the Pleadings and denying Dynamic's Motion for Reconsideration and Motion for Leave to File an Amended Complaint. Dynamic claims that the district court erred in making these decisions. We affirm.
 
 I.
 
 2
 The district court's decisions stemmed from a complaint that Dynamic filed against Archbold and Jones & Henry Engineers, Ltd. ("J&H"). The complaint set forth twelve "causes of action" against the Defendants that arose from a construction contract, "Contract 40," between Dynamic and Archbold. Contract 40 was executed to provide an addition to Archbold's water treatment plant. Dynamic sought damages of approximately $800,000, plus interest, for undue delays, contract payments withheld, and non-payment for extra work. Dynamic also sought damages of $2,000,000 for injury to its business reputation.
 
 
 3
 Because this case was resolved through a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c), the district court was required to take all factual allegations in the complaint as true. Paskvan v. City of Cleveland Civil Serv. Comm'n, 946 F.2d 1233, 1235 (6th Cir. 1991). Dynamic's complaint revealed the following facts.
 
 
 4
 In 1981, Archbold solicited bids for an addition to its water treatment plant. J.A. at 15. Archbold retained J&H, as engineer, to design the addition and prepare various contract documents, all of which came to be known as Contract 40. J.A. at 16. Contract 40, as originally drafted, contemplated a general contractor that would subcontract various aspects of the project. Archbold subsequently divided the contract into four prime contracts pursuant to an injunction. Archbold awarded the contract for Division A (General Work) to Dynamic and awarded the other prime contracts to Meinhart Electric, Inc., W.F. Plumbing and Heating, Inc., and L.R. Babcock Plumbing & heating Co., Inc. Under Contract 40, J&H was designated and authorized to act as Archbold's agent, particularly during the construction period. J.A. at 16-17.
 
 
 5
 Contract 40 provided that Dynamic was responsible for all work and materials needed to complete the addition to Archbold's water treatment plant and appurtenant work, except for work to be performed and materials to be furnished by the other prime contractors, who were also responsible for their respective appurtenant work. Contract 40, as between Archbold and Dynamic for General Work, included a lump sum contract price of $4,071,000 plus unit price amounts of $247,000 for reinforcing steel and $733,410 for concrete, bringing the total contract price to $5,051,410. During the course of performance of Contract 40, Archbold and/or J&H issued change orders modifying the scope of Dynamic's contract work and adding a total of $3794.10 to the contract price. This brought the total contract price to $5,055,204.10. J.A. at 17. In breach of Contract 40, Archbold allegedly refuses to pay Dynamic $69,813.15, which is due on the contract. J.A. at 20 (First Cause of Action).
 
 
 6
 During the course of the construction, Dynamic provided an additional 38,972 pounds of reinforcing steel above J&H's estimated quantity of 650,000 pounds for which Dynamic claims Archbold owes it $14,809.36, plus a lump sum cost of $540. J.A. at 17. Archbold allegedly approved and allowed 28,793 pounds of the 38,972 pounds of reinforcing steel claimed by Dynamic, but Archbold allegedly refuses to pay for any extra reinforcing steel unless Dynamic releases its claims for the balance and all other claims. J.A. at 22 (Third Cause of Action).
 
 
 7
 Dynamic also provided 666.75 cubic yards of Class A concrete over and above J&H's estimated quantity of 5,220 cubic yards, for which Archbold allegedly owes Dynamic $93,678. J.A. at 18. Dynamic contends that Archbold and J&H approved and allowed 182.69 of the 666.75 cubic yards claimed by Dynamic, but Archbold allegedly refuses to pay for any extra Class A concrete unless Dynamic releases its claims for the balance and all other claims. J.A. at 22 (Third Cause of Action). Furthermore, Dynamic provided 251.25 cubic yards of 4-sack concrete and 141 cubic yards of 5-sack concrete for which Archbold allegedly owes Dynamic $52,596, which Archbold refuses to pay. J.A. at 18, 22-23 (Third Cause of Action).
 
 
 8
 During construction, a dispute arose concerning certain washwater pumps that Dynamic installed. J.A. at 20 (Second Cause of Action). J&H prepared the specifications for the washwater pumps and approved pre-manufacturing specifications that the manufacturer submitted. Meinhart Electric installed the electrical connection for the pumps based on J&H's design. J&H refused to approve the start-up of the pumps on the basis of "improper" electrical controls, and J&H refused to accept the pumps on the basis of "improper" motor installation. J.A. at 20-21. These refusals, which Dynamic claims were arbitrary, unreasonable, capricious and in bad faith, allegedly caused Dynamic to suffer direct damages of $6,106.73 (the cost of the washwater pumps) and delay damages incident to a 95-day delay of $172,088. J.A. at 21.
 
 
 9
 During construction, Dynamic claims that it performed substantial work and provided substantial materials, totalling approximately $19,500, which was the responsibility of the other prime contractors. J.A. at 23 (Fourth, Fifth, and Sixth Causes of Action). Dynamic also allegedly performed substantial work and provided substantial services not called for by any of the four prime contracts, but Archbold refuses to pay Dynamic for this extra work, too. J.A. at 23-24 (Seventh Cause of Action).
 
 
 10
 In preparing the plans and specifications for the construction, J&H specified a lead-based paint for application to the filter walls. J.A. at 24 (Eighth Cause of Action). As a result, the painting subcontractor applied the lead-based paint as specified. Id. When Dynamic discovered this error, it removed the lead-based paint from the filter walls and repainted the filter walls with non-lead-based paint. Id. As a result of J&H's error, Dynamic allegedly suffered direct damages of $30,550.16 and delay damages incident to an 80-day delay of $141,929.07. Id.
 
 
 11
 Dynamic claims that J&H's plans and specifications relating to the design and placement of certain valves were negligent and incorrect in that the shear pins provided in the valves were reversed and the valves were designed to operate in the wrong direction. J.A. at 24-25 (Tenth Cause of Action). During the course of the construction, representatives of Archbold attempted to use the incorrectly designed valves and applied excessive and unreasonable force to them, which resulted in damage. J.A. at 25. Dynamic repaired the damaged valves at a cost of $45,431.76 and suffered delay damages of $35,482, due in part to J&H's design error in failing to provide a valve well or manhole for access to the valves. Id.
 
 
 12
 During construction, Dynamic claims that J&H improperly and negligently failed to approve the filter media, which Dynamic had installed, and J&H made improper demands with respect to the testing of such media, all of which resulted in delay damages of $34,008.81. Id. (Eleventh Cause of Action). Generally speaking, Dynamic also alleges that during the course of performance of Contract 40, Archbold took certain steps and failed to take other steps that resulted in delay damages to Dynamic in the amount of $19,274. J.A. at 24 (Ninth Cause of Action).
 
 
 13
 Both during and after the course of the performance of Contract 40, Archbold and J&H did and failed to do many things that Dynamic characterizes as unreasonable, arbitrary, capricious, and in bad faith, and these include the following: refusing to make contract payments to Dynamic, requiring Dynamic to perform work and supply services and materials that were not called for by the contract or that other prime contractors were supposed to perform, delaying Dynamic's performance of its obligations under the contract, failing to enforce the interfacing duties of the prime contractors, withholding information regarding existing obstructions, increasing Dynamic's scope of work, interpreting Contract 40 against Dynamic, and actively interfering with Dynamic's performance under the contract. J.A. at 18-19, 25-26 (Twelfth Cause of Action). As a result of the foregoing activities, Dynamic claims that it was damaged in its reputation, business standing, financial ability, bonding ability, ability to obtain new contracts, and otherwise in the amount of $2,000,000. J.A. at 20, 25-26. Through October 5, 1984, Archbold had paid Dynamic $4,914,849.56 for its work under Contract 40.
 
 
 14
 Dynamic filed its complaint, listing the twelve "causes of action" involving breach of contract and tort, against Archbold and J&H on December 7, 1988. Both Archbold and J&H denied liability for Dynamic's damages, and Archbold counterclaimed against Dynamic, alleging $144,000 in damages for breach of Contract 40. Dynamic also denied that it breached Contract 40.
 
 
 15
 Subsequently, Archbold filed a Motion for Partial Summary Judgment seeking to dismiss Dynamic's claims for performing work that Dynamic claimed was the responsibility of the other prime contractors and to dismiss Dynamic's claim for repairing valves that Archbold allegedly operated with negligence. J&H filed a Motion for Summary Judgment seeking to dismiss Dynamic's claims for negligent design and tortious conduct. The district court denied Archbold's Motion for Partial Summary Judgment, but it granted J&H's Motion for Summary Judgment.
 
 
 16
 The court schedule the trial to begin on June 10, 1991, but subsequently, the court vacated that trial date on May 22, 1991, and rescheduled the trial for December 2, 1991. The court scheduled a pretrial conference for November 18, 1991.
 
 
 17
 On November 15, 1991, prior to the pretrial conference, Archbold filed a Motion for Leave to File an Amended Answer, which attached the entire Contract 40, and a Motion for Judgment on the Pleadings. Dynamic opposed both motions.
 
 
 18
 On December 2, 1991, the district court granted Archbold's Motion for Leave to File an Amended Answer, and the answer was accordingly filed on that date. On the same day, the court vacated the trial date of December 2, 1991, and reset the trial for December 9, 1991. Two days later, the court again vacated the trial date and reset the matter for trial on February 3, 1992.
 
 
 19
 On January 7, 1992, over a month after the previous trial date had been vacated, the district court granted Archbold's Motion for Judgment on the Pleadings. During that interim period, Dynamic did not seek leave or otherwise attempt to supplement its opposition to Archbold's Motion for Judgement on the Pleadings.
 
 
 20
 On January 16, 1992, Dynamic filed a Motion for Leave to File an Amended Complaint and a Motion for Reconsideration of the district court's memorandum and order granting Archbold's Motion for Judgment on the Pleadings. On the same day, Dynamic also moved the court to extend the time in which it could file a memorandum and affidavits in support of its Motion for Reconsideration. The district court granted Dynamic's motion for additional time to file a memorandum until January 31, 1992. On January 31, 1992, Dynamic again requested an extension of time to file its memorandum and affidavits. Again the court granted Dynamic's motion, allowing it to file the documents by February 21, 1992. Dynamic filed its memorandum in support of its Motion for Reconsideration on February 21, 1992.
 
 
 21
 On April 13, 1993, over one year later, Judge Dowd, who had assumed the docket for the late Judge Walinski, denied Dynamic's Motion for Reconsideration and denied as moot Dynamic's Motion for Leave to File an Amended Complaint. The district court terminated the case by granting Archbold's motion to dismiss its counterclaims. This appeal followed.
 
 II.
 
 22
 First, Dynamic claims that the district court erred in granting Archbold judgment on the pleadings regarding Dynamic's breach of contract claims for contract payments withheld, extra work, undue delays, and exercising bad faith in these actions and decisions, as well as Dynamic's tort claims for fraud and injury to its business reputation. Dynamic claims that each of these issues presents material issues of fact that the district court ignored.
 
 
 23
 We review de novo a district court's grant of judgment on the pleadings. Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993). For purposes of the Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings, "all well-pleaded material allegations ... must be taken as true." Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." Paskvan, 946 F.2d at 1235.
 
 
 24
 Our careful de novo review of the district court's grant of judgment on the pleadings indicates that no material issue of fact exists regarding Dynamic's breach of contract and tort claims and that Archbold is entitled to judgment as a matter of law. Thus, we affirm the district court's grant of judgment on the pleadings to Archbold.
 
 III.
 
 25
 Dynamic also argues that the district court should have granted its Motion for Reconsideration to correct errors of law and prevent manifest injustice. A motion for reconsideration is effectively a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e). Huff v. Metropolitan Life Ins. Co., 675 F.2d 119, 122 (6th Cir. 1982). Although this court has held that, generally speaking, the appropriate standard of review for a district court's grant or denial of a motion to alter or amend the judgment is whether the court abused its discretion, see id. at 122-23 (holding denial of Rule 59(e) motion to reconsider a grant of summary judgment was not an abuse of discretion), this court has also noted that "when the lower court rejects an application under Rule 59(e) based upon an erroneous legal doctrine, our standard of review is the same as in other cases of legal error," see id. at 122 n.5. Cf. Columbia Gas Transmission Corp. v. Limited Corp., 951 F.2d 110, 112 (6th Cir. 1991) (relying on Huff but stating that when a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, this court conducts de novo review).
 
 
 26
 Because the district court did not err in granting Archbold's Motion for Judgment on the Pleadings, we find no reason to conclude that the district court abused its discretion in denying Dynamic's Motion for Reconsideration. Accordingly, we also find that the district court did not abuse its discretion when it denied as moot Dynamic's Motion for Leave to File an Amended Complaint.
 
 IV.
 
 27
 Based on the foregoing analysis, we AFFIRM the decisions and judgments of the district court.
 
 
 
 *
 The Honorable Paul H. Roney, United States Circuit Judge for the Eleventh Circuit, sitting by designation