**INTEROCEAN SHIPS, INC., a Delaware Corporation, Plaintiff**

**v.**

**SAMOA GASES, a Corporation, Defendant**

High Court of American Samoa
Trial Division

CA 123-85

March 7, 1996

Before RICHMOND, Associate Justice, and TAUANU'U, Chief Associate Judge.

Counsel: For Plaintiff, William Reardon
For Defendant, Roy J.D. Hall, Jr.

Order Vacating Judgment and Discussing Personal Attorney Sanctions:

■ The court intends by this order to send a message to the entire membership of the American Samoa Bar Association. First, every attorney and legal practitioner should henceforth take T.C.R.C.P. Rule 11, as amended on March 1, 1996, seriously and meet the professional standards contemplated by the Rule. Second, and specific to this action, when we direct parties to brief issues, we ask questions of real concern to us and expect timely and relevant answers. Attorneys who inadvertently or willfully disregard such orders act unprofessionally, and contemptuously if the disobedience is willful. We will impose sanctions for such conduct.

■ The extensive discussion below shows that counsel in this action deserve personal sanctions. However, we will withhold sanctions this time, in light of lengthy, historical leniency, *see Lutu v. Semeatu*, LT No. 9-87, slip op. at 3-6 (Land & Titles Div. Dec. 14, 1989), and the imprecise, complementary natures of T.C.R.C.P. 7(b)(2) and old Rule 11.[1] We also fairly and emphatically warn counsel that we will impose fitting sanctions on counsel personally for future transgressions of either new Rule 11 or the contempt rules.[2]

## I. BACKGROUND

On December 4, 1995, we issued an order contemplating vacation of an earlier judgment awarded to plaintiff Interocean Ships, Inc. ("Interocean") against defendant Samoa Gases ("Samoa Gases"). We were concerned with the question of whether Interocean had dissolved mid-trial, which would abate the case under the common law. To ensure that the earlier judgment was legal and proper, we asked both parties to brief us on the following issues:

> 1) Was Interocean dissolved before judgment was rendered in this case?

---

[1] F.R.C.P. 11 when read with F.R.C.P. 7(b) has always provided a basis for imposing disciplinary sanctions on attorneys. *See* Notes of Advisory Committee on Rules, 1983 Amendment, *Federal Civil Judicial Procedure and Rules*, at 53 (West 1993). When adopted, T.C.R.C.P. 11 (both before and after the present amendment) and Rule 7(b) mirrored their federal rule counterparts.

[2] Sanctions can include fining counsel; requiring him to pay costs, including the opposing party's attorney's fees; citing him for contempt; reprimand; or even disbarment. *See* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1336, at 97 (2d ed. 1990).

2) If so, does the common law apply to abate the proceeding? Does the American Samoa statutory provision overrule the common law and allow the action to survive?

3) Should the Delaware corporations law apply to this proceeding? If so, does that law allow the chose in action to survive Interocean's dissolution?

4) Was there an assignment of the chose in action before the dissolution of Interocean? If so, does the assignment survive the dissolution?

Order Requiring Further Briefing at 4 [hereinafter Briefing Order].

Interocean responded to the Briefing Order by submitting a one-paragraph brief[3] on December 14, 1995, citing only one legal authority. Samoa Gases filed a two-page memorandum on January 5, 1996, two days after the January 3, 1996 due date, pointing out the deficiencies in Interocean's brief, apparently taking issue with its integrity, but failing to address the substantive issues we raised or cite any legal authority. On January 12, 1996, Interocean submitted a reply brief, containing a mere four paragraphs of argument and citing not a single legal authority. On February 1, 1996, Samoa Gases submitted a brief and a supplemental brief finally addressing the issues. On February 8, 1996, Interocean responded to Samoa Gases' briefs with a final reply still ignoring the issues and providing no legal authority.

We now address the arguments presented, concluding that Samoa Gases' brief and supplemental brief must be struck as untimely, and that, nevertheless, the judgment must be vacated and the money paid to Interocean by Samoa Gases must be returned.

## II. DISCUSSION

### A. Samoa Gases' briefs will be struck.

Samoa Gases submitted a very thorough and well-researched brief and supplemental brief. It addressed each issue and made thoughtful arguments on how this court should interpret and apply the law in this case. Unfortunately, Samoa Gases filed these briefs with the court nearly a month after their due date had passed.

---

[3] Not counting the introductory and conclusory sentences.

Although Samoa Gases' original memorandum, which it filed only two days late, stated that "the defendant SAMOAN GASES, INC., is unable to fully respond to the brief filed by the plaintiff, because it is not responsive to the court's order," Def.'s Mem. Opp'n Pl.'s Br. at 2, its brief was not, strictly speaking, a response brief. We asked "[e]ach side" to brief us on the issues. Furthermore, Samoa Gases was not impaired by having to anticipate issues not raised in Interocean's brief, because we had already outlined the issues we wanted to be briefed. As its brief and supplemental brief total 22 pages, Samoa Gases seems to have found plenty to say on the issue despite Interocean's deficient performance.

We gave Interocean 30 days to file its brief and Samoa Gases 20 days from the time Interocean filed to file its brief. Twenty days (plus the initial 10 days before Interocean filed) was more than enough time for Samoa Gases to prepare a brief. If Samoa Gases felt that time was insufficient, it could have properly moved for extra time. Instead, it requested in its memorandum that we give Interocean additional time to file and Samoa Gases time to authenticate documents. We believe this request was, at best, unnecessary or, at worst, intended to cause further delay. Simply put, Samoa Gases should have met its deadline.

What bothers us most about Samoa Gases' lateness is that we, as a court, experienced exactly the results which we try to avoid by imposing deadlines: an unnecessary waste of time and resources. A 20-page opinion and order had been fully researched and written--without the aid of legal argument by either counsel, and was nearly ready to be signed on January 31, 1996. The following day, Samoa Gases filed its brief and supplemental brief with the court.[4] We had to spend additional time determining how to dispose of this case in light of Samoan Gases' belatedly-filed briefs. We actually redrafted much of our earlier opinion, spending more of the court's time and further delaying the disposition of this case, before deciding that the briefs should simply be struck as untimely.

**B. The validity of the judgment must still be determined.**

The fact that we are striking Samoa Gases' briefs does not dispose of this matter. In actuality, we are dealing with a question of subject matter jurisdiction--that is, a question of whether we properly should have continued this action to judgment.

---

[4] We also note that, initially, Samoa Gases filed only the supplemental brief. That brief, however, makes numerous references to the initial brief. During a call to counsel's office, we expressed confusion at these references and achieved realization of the unfiled original brief.

■ "Whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." T.C.R.C.P. 12(h)(3) (emphasis added). This rule, like the rest of our rules of civil procedure, parallels the federal rule. *Compare* Rule 12(h)(3) *with* F.R.C.P. 12(h)(3). Under the Federal Rules, the court, whether trial or appellate, is obliged to notice want of subject matter jurisdiction upon its own motion. *Sumner v. Mata*, 449 U.S. 539 (1981). Therefore, our obligation to undertake a *sua sponte* investigation into the question of subject matter jurisdiction where it may result in dismissal of all or part of a suit does not end simply because the briefs of one party have been struck.

## C. The judgment must be vacated.

As we stated above, Interocean presented us with a total of only five paragraphs of argument--just over 1 page--in its brief and reply brief combined. It cited only one legal authority, a single section of AMERICAN JURISPRUDENCE 2D, a legal encyclopedia which is not controlling authority in this or any other jurisdiction.

Apparently, Interocean merged into another corporation rather than simply dissolving. It asserts that "[m]ergers do not result in a loss of any rights or causes of action. Just the opposite is the effect."[5] Br. Pl. in Response to Ct. Order of Dec. 4, 1995, at 1 [hereinafter Pl.'s Br.] (it is at this point that Interocean cites, incorrectly we might add, 19 AM. JUR. 2D *Corporations* § 2632, at 446 (1986)). Interocean next informs us, without citation or explanation, that "attached hereto is the statement of California law indicating that there is no loss of rights when a corporation merges with another corporation." *Id.*

This is the entirety of Interocean's response to our inquiries. It does not attempt to explain how the fact that it merged into another corporation means that it was not dissolved. It does not attempt to explain why the common law rule of abatement does not apply. It does not attempt to explain where in the American Samoa Code Annotated this jurisdiction has adopted the *statutory* rule that pending actions may survive when a corporation is merged. It does not attempt to explain how "the statement of California law" applies to save this case from abatement. It does not attempt to address our concerns about assignment of a chose in action, even though this is what may occur when one corporation merges into

---

[5] We note that the opposite of "loss" is "gain" or "creation." We assume that Interocean's poor choice of words is not meant to imply that rights or causes of action are created by a merger, but simply that they are not lost.

another. Nor does it attempt to explain why, even assuming every other factor fell in its favor, this court should require Samoa Gases to issue additional checks in the name of someone other than Interocean, the plaintiff in whose name this trial was brought and prosecuted.[6] Nevertheless, Interocean's counsel has the impudence to state: "Based on the foregoing it is *clear* that the checks should be made out to William H. Reardon and Interocean Industries, Inc., as the successor to Interocean Ships, Inc." Pl.'s Br. at 1 (emphasis added).

This is not "clear" to us at all. What is clear to us is that Interocean either has a complete misunderstanding of the law, or has taken a very risky gamble that its single argument that corporate actions survive mergers would satisfy us. We are left to wonder if Interocean's counsel even bothered to read the Briefing Order, let alone the appropriate legal texts or applicable cases. Meanwhile, we made it clear in the Briefing Order why we were concerned with the viability of Interocean's judgment. A meager investigation of the law would have shown Interocean where it went astray.

### 1. Argument that a merger does not bring about a dissolution.

█ To begin with, Interocean's entire premise that a merger is different than a dissolution is just plain wrong. Using the only source Interocean cited in its brief, we find that: "In the case of a merger . . . one of the combining corporations continues in existence and absorbs the other. In other words, *the merged corporation is dissolved or ceases to exist.*" 19 AM. JUR. 2D *Corporations* § 2627, at 440 (1986) (emphasis added, footnote deleted). This passage is found only six pages from the section cited by Interocean, under the heading "Status of Corporations Following Merger, Consolidation, or Exchange of Shares." *See id.* at 437. Had

---

[6] The issue of Interocean's dissolution originally came to our attention when Interocean brought its motion in aid of judgment to have checks for the amount of the judgment issued in the name of Interocean Industries, Inc. We are now led to believe that Interocean Industries is Interocean's successor, following two corporate mergers. Still, Interocean has never presented, and does not now present, a valid legal argument for how or why the checks should be issued in the name of someone other than the plaintiff. Indeed, if "[m]ergers do not result in a loss of any rights," Pl.'s Br. at 1, as Interocean would apparently have us believe, Interocean Industries should have the same right to cash checks made payable to Interocean as Interocean had, and the motion in aid of judgment should have been unnecessary. This point is now moot, since the checks or their monetary equivalent must be returned to Samoa Gases.

Interocean made a reasonable inquiry into the law, it could not have missed this section.

Interocean could have found the same information by looking at any of a number of other sources. "The dissolution of a corporation is the *termination of its existence* as a body politic." BLACK'S LAW DICTIONARY at 425 (5th ed. 1979) (emphasis added). Corporate "merger" is defined as "[t]he absorption of one company by another . . . [with the] absorbed company *ceasing to exist.*" *Id.* at 891 (emphasis added). One section of the California Corporate Code, attached to Interocean's brief without specific citation, states that "[u]pon *merger . . . the separate existence of the disappearing corporation ceases.*" *See* Cal. Corp. Code. § 1107(a) (West 1990) (emphasis added). There is no difference between these definitions. In both a merger and a straight dissolution, the old corporation *ceases to exist.* We expressed precisely this concern, with regard to Interocean, in the Briefing Order:

■ If Interocean's exhibits are correct, it no longer exists. We are not sure, then, who has filed this motion, since it is brought in Interocean's name. *Under the common law, when a corporation ceases to exist, it ceases to have any capacity to sue or be sued.* Briefing Order at 2 (emphasis added). The inescapable conclusion, which Interocean has nevertheless tried to escape with no legal authority whatsoever, is that a *merged* corporation *is dissolved* at the moment of its merger.[7]

## 2. Applicable law.

Interocean's counsel also seems to have a marked misunderstanding for what law applies in American Samoa. The law applicable here is that enacted by the Legislature of American Samoa and codified in the American Samoa Code Annotated ("A.S.C.A."). A.S.C.A. § 1.0201(3). Where the Legislature has not acted, the "common law of England" applies. A.S.C.A. § 1.0201(4). Except under a valid conflict of laws argument, the law of other jurisdictions does not control here, though we may consider it persuasive in interpreting our own law.

The summary of law in AMERICAN JURISPRUDENCE 2D is not controlling here. Particularly when that summary is of statutory law from other

---

[7] We note that a merged corporation may be saved from dissolution if a state legislature passes a statute explicitly intending such a result. *See* 19 AM. JUR. 2D *Corporations* § 2627, at 440-41. There is nothing in the American Samoa Code Annotated to bring about such a result. The California Corporations Code is directly and explicitly opposite. *See* Cal. Corp. Code § 1007(a) (West 1990). We have not yet been informed on what the Delaware Corporations Code says on this issue.

204

jurisdictions, and similar statutes have not been enacted in the Territory. Nor is California law, attached to Interocean's brief without explication, controlling here. If Interocean would have liked to make a conflict of laws argument that the law of California or another jurisdiction should apply in this case, we would have gladly welcomed it. In fact, we explicitly asked for it in our Briefing Order.[8] Interocean, however, chose not to make such an argument. Thus, we must look first to the A.S.C.A., then to the common law to determine how to resolve this issue.

The A.S.C.A. has a corporations code, but no section explicitly deals with the question of pending lawsuits upon the dissolution (or merger) of a corporation which is party to the suit. The code does inform us that a voluntarily dissolved corporation "may nevertheless continue to act for the purpose of winding up their affairs," A.S.C.A. § 30.0121, but it is unclear whether this includes continuing pending lawsuits. Normally winding up of affairs refers to collection and distribution of assets along with payment of outstanding obligations. *See* 19 AM. JUR. 2D *Corporations* §§ 2828-2830. Though "winding up" statutes like ours may be interpreted to include the continued ability of a corporation to sue, be sued, or maintain an existing suit, they normally are not. *See id.* at § 2842. A.S.C.A. § 30.0121 has not been interpreted to allow such actions. We explicitly invited counsel to brief us on the question of how the code should be interpreted, but Interocean failed to respond on this

---

[8] We stated very clearly that "[t]here is also an unaddressed conflicts of law issue." Briefing Order at 3. We mentioned that Delaware law might have applied, since Interocean was a Delaware corporation. *Id.* at 3, 4. We now know, however, that California law might also have applied, since Interocean Industries is a California corporation.

We also again note that Interocean has attempted to bring California law to our attention by attaching a photocopy of one page of the California Corporations Code to its brief, stating simply that "attached hereto is the statement of California law indicating that there is no loss of rights when a corporation merges with another corporation." *See* Pl.'s Br. at 1, ex. B. Even assuming Interocean had made a valid argument that California law is relevant, there are some 12 sections and subsections on the attached page. Interocean has given us no citation to or explanation of which section or sections it feels are relevant or why. It is not our job to cull through attorneys' photocopied references to find law which might or might not be relevant to their argument. *Cf. Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (imposing F.R.C.P. Rule 11 sanctions, stating that "[c]ounsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation").

point. Thus, we can assume that the common law rule of abatement continues to apply in American Samoa.

■ We stated the common law rule of abatement in the Briefing Order: when a corporation dissolves, any action being prosecuted in its name abates. The very section in AMERICAN JURISPRUDENCE 2D, which Interocean cites as its only legal authority, states the common law rule as applied to a merger: "[T]he common-law rule . . . recognized that a chose in action to enforce a property right upon merger vests in the successor corporation and *no right of action remains in the merging corporation.*"[9] 19 AM. JUR. 2D *Corporations* § 2632 (emphasis added) (citing *Sun Pipe Line Co. v. Altes*, 511 F.2d 280, 283 (8th Cir. 1975)). Interocean has apparently misread or misapplied the only legal source it bothered to cite.

Thus, upon a reasonable inquiry into the law, what is "clear" is that, following its merger, Interocean had no ability to prosecute this suit under the common law. The case should have abated at that time, and the judgment in its favor must now be vacated. If a judgment which was rendered after a corporations dissolution has been entered and collected, the money must be returned. *See* 19 AM. JUR. 2D *Corporations* § 2906, at 684 (citing *Ingraham v. Terry*, 30 Tenn. 572).

Therefore, Interocean must either return the checks to Samoa Gases, or if the checks have already been negotiated by Interocean Industries or some other person, the full amount of the checks. A reasonable timeframe for this purpose is 30 days. Because Samoa Gases has been deficient in its performance on this matter, no interest will be awarded to them if Interocean returns the checks or pays the full amount of the checks within 30 days. However, should Interocean fail to return the checks or pay an equivalent amount within 30 days, interest at 6% per annum will begin to accrue, retroactively applied from the date of this order.

## III. ORDER

---

[9] Thus, at common law, and apparently under most statutes, a merger functions much like an assignment with regard to a chose in action. Thus, Interocean should at least have answered our fourth inquiry regarding assignment of the chose in action.

On that point we note that a case must be brought in the name of the real party in interest, T.C.R.C.P. 17(a), and that an assignment, explicit or implicit, without more, does not give the assignee the right to prosecute an action in the assignor's name. *Cf.* 26 Fed. Proc. L. Ed. § 59:35 (stating the same rule for F.R.C.P. 17(a), upon which T.C.R.C.P. 17(a) is based).

Our earlier judgment of May 2, 1994 awarding damages in favor of Interocean against Samoa Gases is vacated. Interocean shall return the checks issued to it in satisfaction of the judgment, or pay an equivalent amount, to Samoan Gases within 30 days. If it fails to do so, interest, retroactive to the date of this order, will accrue at 6% per annum.

It is so ordered.